**BROTHERHOOD OF RAILWAY, AIRLINE, AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, Petitioners,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Respondent.**

**Civ. A. No. TY–83–232–CA.**

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 17, 1985.

Spencer F. Robinson, Pine Bluff, Ark., for respondent.

Thomas Hathaway, Tyler, Tex., Joseph Guerrieri, Jr. & John A. Edmond, Guerrieri & Sweeney, Washington, D.C., for petitioners.

**ORDER**

JUSTICE, Chief Judge.

Before the court for resolution are cross motions for summary judgment under Rule 56, F.R.Civ.P., filed by petitioners, Brother-

hood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees (BRAC), and respondent, St. Louis Southwestern Railway Company (SSW), respectively. For the reasons that follow, it is held that there is no genuine issue as to any material fact, and that, as a matter of law, summary judgment on behalf of petitioners BRAC and against SSW is proper. In addition, BRAC is awarded attorney's fees and costs.

This civil action was instituted by petitioner BRAC for enforcement of Award No. 316 of Public Law Board 1186.[1] Jurisdiction is predicated on 45 U.S.C. § 153, First (p),[2] which permits a party to seek enforcement of an Adjustment Board award in federal district court. The material allegations are not in dispute.

The underlying controversy began, in early 1975, when SSW began using an outside contractor to transport bad order wheels. BRAC, alleging that the use of an independent contractor was violative of its collective bargaining agreement, sought to resolve the matter through grievance. After failing to settle their differences, BRAC and SSW sought arbitration of the claim before Public Law Board 1186. On May 9, 1983, the Board rendered its decision in Award No. 316. In its decision, the Board found that it had jurisdiction over the dispute, and that the terms of the collective bargaining agreement had been violated. Consequently, the Board sustained BRAC's claim. For relief, the Board ordered SSW to pay Charles Helloms, Jr., a BRAC member, "in addition to all other earnings, eight (8) hours for five (5) days each work week commencing as of February 18, 1975, until such time as the parties stipulate, in writing, that *SSW* has purged itself of the violation." Resp. ex. A, p. 15. The award is undiminished by any amount which Helloms earned during the period in question.

Thus, the Board penalized SSW for the violation.

Dissatisfied with the penalty pay aspect of the award, the carrier member of the Board, R. L. Camp, requested an interpretation of the award from the neutral member of the Board, John J. Gaherin. Specifically, Camp asked Gaherin "to state the express rule or provision of the [BRAC–SSW] collective bargaining agreement that the neutral relied on when concluding a penalty was required." Resp. Br. p. 2–3. Prior to receiving the neutral's interpretation, an SSW representative informed BRAC that SSW would not "comply with the Award until the matter had been adjudicated." *Id.* at 3. Consequently, BRAC instituted this action, and SSW cross-petitioned to set aside the award.

Thereafter, the neutral board member, Gaherin, answered respondent's request for an interpretation. In a memorandum dated September 6, 1983, he explained that, in determining the appropriateness of the penalty, he "relied on the whole cloth of the collectively bargained agreement ... the agreed upon interpretations thereof ... the long standing practice of the parties." Respondent's ex. G, p. 4. In support of this rationale, the neutral member cited Award 211 of Public Law Board 1186.

Award 211 was rendered in a case involving petitioner BRAC and respondent SSW. In that case, dated June 7, 1977, penalty pay was awarded for a contract violation at the rate of time and one-half. The award specified that the pay was "to be in addition to any and all compensation" the remunerated employee may have already received. Resp. ex. H.

## DISCUSSION

It is beyond dispute that "[j]udicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the re-

---

**1.** The use of Public Law Boards, as an alternative to the National Railroad Adjustment Board, is authorized by 45 U.S.C. 153 Second. Consequently, Public Law Boards "must conform to the same procedural restraints imposed on the Adjustment Board ... [and] any decisions or statutes delineating the powers and responsibilities of the National Adjustment Boards are ap-

plicable [to them]." *Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express And Station Employees v. St. Louis Southwestern Railway Company,* 676 F.2d 132, 135 n. 2 (5th Cir.1982).

**2.** *See,* note 3, *infra.*

quirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption, 45 U.S.C. § 153 First (q)." *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). Unless respondent's objections to an Adjustment Board decision fall within one of these three categories, the Board's "findings and order ... shall be conclusive on the parties," 45 U.S.C. 153 First (q), and may not be set aside by a federal district court. *Sheehan,* 439 U.S. at 93, 99 S.Ct. at 402. In resisting the award, respondents assert only the second ground, claiming that the Board has failed to "confine [ ] itself to matters within the scope of its jurisdiction." *Id.* Thus, the law applicable to review of jurisdiction of a Public Law Board will be considered.

### Jurisdiction to Award Penalty

Under the Railway Labor Act, "disputes between an employee ... and a carrier ... growing out of grievances or out of the interpretation or application of agreements" 45 U.S.C. § 153, First (i), are to be resolved by Public Law Boards. Further, § 153, First (m) provides that Public Law Board "awards shall be final and binding upon both parties to the dispute." Similarly, § 153, First (p) provides that "the findings and order" of the Board "shall be conclusive on the parties." [3] This broad grant of jurisdiction to the Public Law Board, and the finality of its orders, was recognized by the parties to this suit. Section 9 of the Memorandum of Agreement between SSW and BRAC provides that

"awards of the board shall be final and binding on the parties." Resp. ex. B. Finally, § 1 of the memorandum recognizes the right of the parties to limit jurisdiction of the Board, a right not exercised in this case. *Id.*

The wide jurisdictional ambit given to Public Law Boards reflects the fundamental precept that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Reliance on the arbitrator's "informed judgment" is particularly appropriate "when it comes to formulating remedies." *Id.* at 597, 80 S.Ct. at 1361. And though it is true that an arbitrator "does not sit to dispense his own brand of industrial justice", *id.,* nevertheless, "[i]t is the arbitrator's construction [of the collective bargaining agreement] which was bargained for." *Id.* Thus, it is well recognized that "judicial review in enforcement cases is among the narrowest known to the law." *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir. 1970).

The limited function of this court, then, is to determine whether the arbitration decision "draws its essence from the collective bargaining agreement." *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. The basis for this determination may be either the express terms of the contract or the custom and practice of the industry. *Brotherhood of Railroad Trainmen v.*

---

**3.** 45 U.S.C. § 143 First(p) pertinently provides: If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file ... a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties ... If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

*Central of Georgia Railway*, 415 F.2d 403, 416 (5th Cir.1969). If the arbitrator's award takes as its source either the provisions of the contract or the industry practice, then judicial review is foreclosed. *Id.*

In making this determination, the scope of a district court's "review is much narrower than the substantial evidence test." *Id.* at 411. Enforcement is appropriate when the award has "a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement." *Id.* at 412. Thus, if there is some evidence to indicate that the award has a "foundation in reason or in fact," *id.* at 410 (citations omitted), then enforcement is mandated.

▮ Petitioner now seeks enforcement of an Arbitration Board award instructing that Helloms, or "his successor[s] shall be paid by *SSW* in addition to all other earnings, eight (8) hours for five (5) days each work week commencing as of February 18, 1975, until such time as the parties stipulate, in writing, that *SSW* has purged itself of the violation of the collectively bargained agreement." Resp. ex. A, p. 15. Petitioner maintains that this award is rationally inferable from the BRAC–SSW agreement, and furthers its goals. In support of its cause, petitioner relies on *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Company*, 415 F.2d 403 (5th Cir.1969). In *Georgia Railway*, the union challenged the change of a home terminal without prior negotiation with the locals. The change of terminals resulted in the reassignment of three trainmen. The Adjustment Board upheld the union's challenge, and awarded the three employees "a full day's pay ... for every day that the change in home terminals remained in effect." *Id.* at 406. The award was undiminished by pay earned by the trainmen during the period of the violation. The railroad challenged the monetary award, claiming that penalty pay was not authorized by the collective bargaining agreement and thus beyond the jurisdiction of the Board.

The Fifth Circuit disagreed, noting that an express contractual provision was not necessary to sustain a penalty pay award under the Railway Labor Act. Rather, "all an award of the Board requires to put it beyond the reach of the court" is a "foundation in fact and in law." *Id.* at 415. In finding this requirement satisfied, the court relied on several factors.

First, prior Fifth Circuit cases had established the principle that violations of collective bargaining agreements could be remedied by awarding "double pay." [4] Second, thousands of Board awards "recognize[d] the principle of penalty pay." *Id.* at 415, n. 22. Third, industry custom and practice were found "valid bases for fashioning remedies where the contract does not explicitly exclude them." *Id.* at 416.

Finally, the *Georgia Railway* court rejected the carrier's claim that the award unreasonably penalized it for "seeking to enforce [its] legal rights" by making a business decision to change terminals. The court reasoned that instead of awaiting the outcome of the grievance process, the railroad could have returned to its prior practices and precluded the penalty award altogether. Thus, under *Georgia Railway*, a party is encouraged to resolve contract disputes through grievance and arbitration, not through unilateral actions.

Respondent relies on two cases to resist the award. First, SSW asserts that under *Refinery Employees Union v. Continental Oil Company*, 268 F.2d 447 (5th Cir. 1959), "penalty pay is only appropriate when an arbitrator is given that power by express language in the contract." Resp. Br. p. 9. Second, respondent asks the court to follow a Fourth Circuit case, *Norfolk and Western Railway Company v. BRAC*, 657 F.2d 596 (4th Cir.1981). There, the court upheld a lower court ruling which set aside a penalty awarded in the absence of express language in the collective bargaining agreement to sustain the award.

The present case comes within holding of *Georgia Railway, supra.* On the facts

---

4. In *Hodges v. Atlantic Coastline Railroad Co.*, 363 F.2d 534 (5th Cir.1966) and *Sweeney v. Florida East Coast Railway Co.*, 389 F.2d 113 (5th Cir.1968), the court had upheld a "double pay" award. *Georgia Railway*, 415 F.2d 415.

submitted, it is apparent that Gaherin's award was inferable from the contract and furthers its purpose. As in *Georgia Railway*, there was evidence on the record to demonstrate that monetary awards in excess of actual earnings was part of the practice of these parties. Award 211, Resp. ex. H, clearly demonstrates that fact. Respondents' allegations to the contrary are unsupported by documentary proof. Thus, the court is inexorably drawn to the conclusion that Gaherin's award was within the jurisdiction of the Board, and a summary judgment for petitioner is required.

Respondent contends that Award 211 does not support Gaherin's decision in this case. SSW bases this contention on the following argument: The underlying dispute in Award 211 involved non-union workers doing work previously assigned to union members as overtime. In this case, however, "BRAC did not take the position that the work being performed ... was done on an overtime basis." Resp. Br. p. 8. Respondent reasons that the distinction between overtime in Award 211, and regular work hours in this case, precludes a penalty pay award. This argument is found unconvincing for two reasons.

First, "[d]istinctions of this sort are simply too nice for the statutory standard of review." *Georgia Railway*, at 415. The issue in this case is not whether a violation of the collective bargaining agreement occurred. Respondent does not challenge the arbitrator's decision on that score. What is at issue is whether industry practice supports an award of penalty pay for a contract violation. Award 211 sufficiently establishes that fact to satisfy the standard of review in enforcement cases. Since it has been shown that penalty pay is part of industry practice, the arbitrator's "informed judgment" "when it comes to formulating remedies" must be respected by

the court. *Enterprise Wheel, supra* 363 U.S. at 597, 80 S.Ct. at 1361.

Second, even if respondent's factual distinction were cognizable, the conclusion of the court would not change. The harm to the union in Award 211 was loss of overtime work. The harm to the union here was loss of regular work. If penalty pay were appropriate in only one case, it would be this one, since the loss of regular work constitutes a greater erosion to BRAC's interests. To state the obvious, if a penalty is inferable from a contract violation for loss of overtime, a stronger inference is available when loss of regular work is involved.

Respondent's reliance on *Refinery Employees, supra*, is misplaced. There, the court barred a penalty award in an oil industry dispute in the absence of "express language in the contract." However, it is self-evident that oil industry practices have but little application in a railroad-labor dispute. Second, the 1966 amendments to the Railway Labor Act, which limited federal court review of arbitration awards in railroad-labor cases, must be acknowledged.[5] Those amendments *post*-dated *Refinery Employees*, lessening its impact. Finally, whatever vitality *Refinery Employees* may have had in this case was obviated by *Georgia Railway*, where the court held that no express contractual provision is needed to sustain a penalty. *Georgia Railway*, 415 F.2d at 412–16.

Nor has it been convincingly shown that the Fourth Circuit's decision in *Norfolk & Western Railway Company v. BRAC*, 657 F.2d 596 (4th Cir.1981), precludes enforcement of a penalty in this case. While it is true that the *Norfolk and Western* court denied enforcement of an arbitrator's assessment of penalty pay, in the absence of an express contractual provision,[6] that is not the law of this circuit.

**5.** *See Georgia Railway*, 415 F.2d at 409–11.

**6.** The *Norfolk and Western* decision, 657 F.2d 596, rested on the faulty assumption that the *Georgia Railway* court "[d]id not go so far as to support the award of purely penalty pay." *Id.* at 602. The *Norfolk and Western* court concluded that *Georgia Railway* "merely upheld the award of compensatory damages in the form of the

wages an employee would have earned had he been appointed to a position to which he was entitled under a collective bargaining agreement unmitigated by the earnings he made in the lower paying position that he continued to retain during the period of violation." *Id.*

It is apparent that the quoted language, the holding of *Georgia Railway*, represents authori-

It is axiomatic that this court is constrained to follow the prevailing Fifth Circuit decision announced in *Georgia Railway, supra.* In this regard, it must be noted that the *Georgia Railway* case had been decided prior to the 1971 collective bargaining agreement between SSW and BRAC. As a result of that case, SSW was on notice that the absence of contractual language barring penalty pay could result in such an award. SSW had the opportunity to negotiate for such a provision, and failed to do so. For their part, BRAC had a reasonable expectation that a contract violation would be remedied by a penalty under *Georgia Railway.* To follow *Norfolk and Western* in this case would compromise the original negotiating posture of SSW and BRAC, an unwarranted intrusion into the affairs of two freely contracting parties.

Finally, BRAC is granted attorney's fees and costs under 45 U.S.C. § 153, First (p). *See, Norfolk and Western, supra,* at 603. Accordingly, it is

ORDERED that Award No. 316 of Public Law Board 1186 shall be, and it is hereby, ENFORCED against respondent SSW; and it is further

ORDERED that the parties shall agree upon or submit affidavits and other evidence of the sums due to the claimant upon whose behalf petitioner BRAC brought this action, by January 15, 1986; and it is further

ORDERED that petitioner BRAC submit affidavits and other evidence of the attorney's fees claimed to be taxed as part of the costs of the case pursuant to 45 U.S.C. § 153, First (p) by January 15, 1986, and that respondent file any response to them by January 31, 1986.

---

zation of a penalty award under the Railway Labor Act. Any doubt as to that conclusion is resolved by reference to the Georgia Railway decision itself. "... the Board surely did not ... exceed its jurisdiction in awarding penalty pay." 657 F.2d at 603.