**William D. BENONI,**
**Plaintiff, Appellant,**

v.

**BOSTON AND MAINE CORPORATION,**
**et al., Defendants, Appellees.**

No. 87–1158.

United States Court of Appeals,
First Circuit.

Heard July 30, 1987.

Decided Sept. 10, 1987.

Jonathan B. Chase with whom William A. Norris, Northampton, Mass., was on brief for appellant.

Nancy J. Bregstein with whom Ralph J. Moore, Jr., William F. Sheehan and Shea & Gardner, Washington, D.C., were on brief for appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

As will be immediately apparent, this is a *sui generis* case. Although the exercise of self restraint prevents us from describing it in a more poignant manner the least we can say is that it might well deserve a separate chapter in Jethro K. Lieberman's book, *The Litigious Society*.[1]

Not satisfied with having had his day in court appellant claims a right to several such days, a goal as to which he has received legislative aid and comfort in the form of a private bill. He fails, however, to bring himself within the intent of the latter.

*Background*

This saga commences with a work stoppage at appellee's (B & M) East Deerfield, Massachusetts yard on March 17, 1974. As a result of this action appellant (Benoni), an official of Local 587 of the United Transport Union (UTU), a labor organization

---

1. Lieberman, *The Litigious Society,* Basic Books, Inc., New York (1981).

**54**

which represents B & M's yard employees at that location, was subjected to disciplinary action by the B & M.

This action was challenged by the UTU invoking the grievance procedure of the collective bargaining agreement. The grievance ended in a formal proceeding before Public Law Board 1464 (Board), an adjustment board established pursuant to § 3 of the Railway Labor Act (RLA).[2] The Board concluded that Benoni played a central role in calling an unauthorized and illegal work stoppage, and thus sustained his discharge. F.J. Edzwald (Edzwald), B & M's appointed member on the Board, and Arthur T. Van Wart (Van Wart), the neutral member, voted to sustain the discharge, while John Scanlan (Scanlan), the general chairman of the UTU and its representative on the Board, voted against such a result.

█ Displeased with this conclusion, and apparently cognizant of the limited role of the courts in reviewing arbitration awards under the RLA,[3] Benoni filed a suit in district court alleging a violation of § 3 First (q) of the RLA,[4] claiming that his dismissal was the result of fraud and corruption by a member of the adjustment board. *See Benoni v. Scanlan,* Civil Action No. 75–5332–Z (D.Mass.) (*Benoni I*). In the course of deciding cross motions for summary judgment, the district court made the following finding:

> Plaintiffs also acknowledge that all of the alleged acts of fraud occurred prior to the convening of the Board and were allegedly committed by defendants Scanlan and Edzwald not in their capacity as members of the Board but in performing

their functions at the earlier hearings as representatives of plaintiffs and the Railroad respectively.

*Id.,* Memorandum of Decision (Zobel, J., January 31, 1980), at p. 3. The court then concluded that § 3 First (q) of the RLA was not intended to permit scrutiny of such situations but rather was directed to "protect against corruption by members of the Board as members and in the decision making process." *Id.* at p. 3. It further ruled that in view of Benoni's allegations, which implicated matters that anteceded the Board's proceedings, the court lacked jurisdiction to set aside the Board's ruling.

Still unsatisfied, Benoni exercised his right to appeal to this court, which affirmed and adopted the district court's opinion in a brief, unpublished decision. *Benoni v. Scanlan,* 634 F.2d 616 (1st Cir. 1980).

The federal court proceedings, however, are only part of the story. While these were pending Benoni filed a similar suit in the Superior Court of the Commonwealth of Massachusetts, also claiming that Scanlan had failed to properly advise and defend him at the disciplinary hearing, and that Scanlan and representatives of the B & M had conspired to violate his rights. *Benoni v. Scanlan,* Civil Action No. 77–1334 (Superior Court, Middlesex County, Commonwealth of Massachusetts) (*Benoni II*). On November 5, 1980, Benoni and his wife as well as their lawyer signed an agreement for judgment in that case, which was joined by counsel for Scanlan, Edzwald and B & M, stipulating that "[j]udgment [would be] entered for defendants with prejudice and without costs."

---

**2.** 45 U.S.C. § 153.

**3.** The pertinent provision of the RLA states that: On such review, the findings and order of the [adjustment board] shall be conclusive on the parties, except that the order of the [board] may be set aside, in whole or in part, or remanded ..., [1] for failure of the [board] to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the [board's] jurisdiction, or [3] for fraud or corruption by a member of the [board] making the order.

See 45 U.S.C. § 153 First (q). *See also Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978); *Stanton v. Delta Air Lines,* 669 F.2d 833 (1st Cir.1982). The review of adjustment board awards by the courts is "among the narrowest known to the law." *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970). *See also Jones v. Seaboard System R.R.,* 783 F.2d 639, 642 (6th Cir.1986); *Brotherhood of Locomotive Engineers v. St. Louis S.W. Ry.,* 757 F.2d 656, 661 (5th Cir.1985).

**4.** *See ante* footnote 3.

*The private bill*

Undaunted, Benoni decided to fish in other waters. He secured the passage of a private bill on his behalf to attempt the resurrection of his claims. Hearings were held before the Subcommittee on Administrative Law and Governmental Relations on September 28, 1983. *See* H.R. Report No. 98–492, 98th Cong. 1st Sess. (Nov. 8, 1983). Notwithstanding the opposition to the bill expressed by the Justice Department, the subcommittee recommended to the Committee of the Whole House that the bill be passed in order that Benoni be allowed "to present his claim that an act of fraud or corruption occurred[,] which testimony before the subcommittee indicated may have materially affected the decision of the Board in his case." *Id.* at 2.

The testimony to which the report referred was that of Representative Conte in response to Representative Kindness' inquiry as to the nature of the act of corruption that was alleged:

> Mr. KINDNESS. Thank you, Mr. Chairman.
>
> It has been generally alleged that there was an act of corruption. Could the gentleman tell us the nature of the Act that is alleged to have been of some effect on the decision?
>
> Mr. CONTE. The fraud that Benoni contends occurred was bribe. He says that someone, a certain individual, be (sic) a member of the Public Law Board and was bribed to vote against him. Thus, the sequence of events was the individual was bribed to vote against Benoni, was then appointed a member of the Board, then voted against him. Thus, fraud did have a direct bearing on the case. He's got to prove that, though, in the court.

Appellant's Record Appendix at p. 7.

On February 22, 1984, Congress enacted Private Law 98–9. The legislation provides that:

> (a) notwithstanding any other provision of law, jurisdiction is hereby conferred on the United States District Court for the District of Massachusetts to review and render judgment on the decision of Public Law Board 1464 with respect to the discharge of William D. Benoni of South Deerfield, Massachusetts, from his employment with the Boston and Maine Railroad Corporation. In conducting such review, the court shall consider any alleged fraud or corruption by a member of the Public Law Board that was committed prior to the convening of the Board, if such fraud or corruption relates to the dispute which was the subject of the Board's decision.
>
> (b) Any previous decision of the United States District Court for the District of Massachusetts with respect to the matter described in subsection (a) of this section shall not be a bar to the exercise of jurisdiction conferred by this Act, and shall not be considered by the court in reviewing and rendering judgment with respect to such matter.

*The new suit (Benoni III)*

On August 10, 1984, Benoni filed a "petition" in the United States District Court for Massachusetts. *Benoni v. Boston & Maine Corporation and Public Law Board 1464*, Civil Action No. 84–2300 MC (*Benoni III*). With one exception, a comparison of this document with that of the complaints in *Benoni I* and *II* reveals that the substance of the "new" allegations is essentially the same as in the earlier suits: that there was fraud and corruption in the manner in which Scanlan represented him in the disciplinary hearings and in picking Van Wart as the third member of the Board. It is alleged that Van Wart was not impartial in that he was a friend of Scanlan and because he had formerly been the chairman of the UTU's predecessor organization.

The additional allegation that is made in *Benoni III* is Benoni's contention that the B & M committed what amounts to an unfair labor practice under Section 2 Fourth of the RLA,[5] by discharging him discriminatorily for the same conduct for which other employees, who were not offi-

---

5. 45 U.S.C. § 152 Fourth.

cers of the UTU, only received two days suspension. Petition, ¶ 8. Benoni seeks damages in the amount of $400,000 by reason of this new claim. Petition, ¶ 5 of prayer for relief.

Boston & Maine filed a motion for summary judgment, which was granted by the district judge. In so ruling the court concluded that:

> There is no allegation here of bribery involving a board of arbitration member. The grounds appear to be the same as those offered in the prior federal action. Assuming, without deciding, that the private law is valid, apparently nothing new by way of factual matter is offered to the Court this time around. A study of the earlier case and the present one reveals no difference.

> Since no difference appears, the matter is indeed *res judicata* by virtue of both the state court and this court's prior judgments. Private Law 98–9 was not and could not have been enacted to allow petitioner to relitigate the same lawsuit, because under the doctrine of *res judicata*, "a final judgment on the merits bars further claims by parties ... based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979). The defendant's motion for summary judgment is, accordingly, allowed.

Benoni appealed from this decision.

Although this appeal bristles with constitutional issues related to the separation of powers doctrine, and the equal protection and due process clauses, following well-established precedent we need not decide this case on constitutional grounds because it can be properly disposed of on non-constitutional ones. *Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974); *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936); *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909).

*The alleged unfair labor practice*

The allegation of an unfair labor practice in *Benoni III* is a new claim never previously made in either *Benoni I or II*, or in the grievance proceeding or the formal hearing before the Board. Although the District Court did not decide this issue, it was properly raised in the petition and in the response thereto, and the matter has been argued and briefed on appeal before us. We thus decide this issue without need for remand.

■ Contrary to unfair labor practice proceedings under the National Labor Relations Act, as amended, 29 U.S.C. §§ 141 *et seq.*, which are principally litigated in administrative proceedings before an executive agency, the National Labor Relations Board, 29 U.S.C. §§ 160–161, under the RLA unfair labor practice charges claiming discrimination can be filed directly in the district court by the aggrieved party. *See Railway Labor Executives' Association v. Boston & Maine Corp.*, 808 F.2d 150, 157 (1st Cir. 1986). Thus, the new claim of discriminatory treatment in discipline because of union activity is a proper claim before the district court unless there are other grounds to sustain the dismissal. Unfortunately for Benoni, such grounds do exist.

■ By waiting until *Benoni III* to allege discriminatory discharge in violation of § 2 Fourth of the RLA, Benoni has filed his complaint more than ten years after the claimed improper action took place. Although the RLA has no statute of limitations of its own, the courts, following the lead in *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), have "borrowed" the six-month limitations period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), and applied it to actions claiming unfair labor practices under the RLA. *Robinson v. Pan American World Airways*, 777 F.2d 84 (2d Cir.1985); *Linder v. Berge*, 739 F.2d 686 (1st Cir.1984); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir.1984); *Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1193 (3d Cir.1984). The new claim is thus clearly barred.

We are forced to reach this same result even if we consider the new claim to be one which challenges a decision of the Board,

an avenue of decision left open in *Linder*, 739 F.2d at 689. The two-year period provided in the RLA for challenging such actions has also been exceeded, 45 U.S.C. § 153 First (r). This is so even if we concede for present purposes that *Benoni I* and *II* tolled that statutory period. *Benoni III* was still filed more than two years after *Benoni II* was dismissed.

The new claim alleging violation of Section 2 Fourth of the RLA is time-barred.

*The cause of action created by Private Law 98–9*

Assuming the constitutional validity of Section 1(b) of Private Law 98–9, which purports to invalidate the res judicata effect of *Benoni I*, the question arises whether the "petition" filed in *Benoni III* alleges the cause of action created by this statute. The legislative history of Private Law 98–9 clearly establishes that the reason for the enactment was to permit Benoni to prove that an "individual was bribed to vote against Benoni, was then appointed a member of the Board, then voted against him." *See ante* at 55. Unquestionably the petition filed in *Benoni III* makes no such allegation, and the district court so found. *Ante* at 56.

Appellant now claims, however, that "[i]t seems that the Congressman and sponsor of P.L. 98–9 reported mistakenly to the hearing that the fraud and corruption perpetrated on Benoni took the form of bribery," Appellant's Brief at 13, and that in any event "Congressman Conte's statements must be taken lightly." *Id.* at 14. In a sudden spasm of legal rectitude, "strict constructionism" and "plain meaning" become the banners around which appellant seeks to rally his forces against the "mistaken" statements of his former paladin.[6] Appellant claims that because the "plain meaning" of Section 1(a) of Private Law 98–9 allow his claim, resort to legisla-

tive history "need [not] be made, nor is permissible." *Id.* at 13.

■ Although we subscribe generally to the principle that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, to enforce it according to its terms, *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916), we do not agree to its mechanical application and even less to its relevance to the present circumstances. The private bill in question is hardly run of the mill and contrary to appellant's contention, the meaning of this statute is anything but plain. Only by going into the background of this controversy can we even begin to discern its nature. We cannot, and should not, as appellant would have us, be selective in our probing. What was the cause of action created by Congress in enacting this bill is the most relevant issue pending in *Benoni III*. Without consideration of the legislative history of the bill, we are left in the midst of a most confusing and contradictory scenario.

More importantly, however, because of the unusual circumstances surrounding this private bill, there is a more basic reason why consideration of its legislative history is not only appropriate, but mandatory. As previously indicated, federal courts are duty bound to avoid constitutional confrontation when there exist suitable alternate grounds of decision. *Hagans, supra; Ashwander, supra; Siler, supra; United States v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980). Were we to blindly accept appellant's interpretation of Private Law 98–9, the power of Congress to enact legislation under Article I of the Constitution would be placed in direct conflict with the inherent powers of the courts established in Article III and under the principle of separation of powers. *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 411–

**6.** Because it is no longer to his advantage, appellant now seeks to distance himself from his sponsor. In his brief he cites from *Sutherland Statutory Construction* for the proposition that: The "sponsor" in fact knows no more about the bill than anyone else.... [W]here the sponsor does have specific knowledge of the

bill, his statements may sacrifice complete candor to partisan interest in enactment of the bill.
Sands, *Sutherland Statutory Construction* (3d ed. rev.), Callaghan & Co. (1974), Vol. 7A, ¶ 48.15, p. 337.

414, 1 L.Ed. 436 (1792) ("no decision of any court of the United States can, under any circumstances ... agreeable to the Constitution, be liable to a reversion, or even a suspension, by the Legislature itself, in which no judicial power of any kind appears to be vested ..."). *See also Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); *United States v. Klein,* 80 U.S. (13 Wall.) 128, 146–147, 20 L.Ed. 519 (1871); *United States v. Sioux Nation,* 448 U.S. 371, 391–392, 100 S.Ct. 2716, 2728–2729, 65 L.Ed.2d 844 (1980); *Daylo v. Administrator of Veterans' Affairs,* 501 F.2d 811, 816 (D.C.Cir.1974). *See generally* Brest, *Congress As Constitutional Decisionmaker and Its Power to Counter Judicial Doctrine,* 21 Ga.L.Rev. 57 (1986).

■ Even if the private bill was "plain and unambiguous," it would be appropriate for us to adopt " 'a restricted rather than literal ... meaning of [this statute] where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute'." *Ciampa v. Secretary of H.H.S.,* 687 F.2d 518, 524 (1st Cir.1982). Were we to accept appellant's interpretation of Private Law 98–9 it would lead to such results.

Last, but not least, we should point to well-established Supreme Court doctrine which rejects the extreme adherence to the "plain meaning rule" promoted by appellant. *See United States v. American Trucking Association,* 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) ("[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'."); *Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp.,* 348 U.S. 437, 442, 75 S.Ct. 489, 491, 99 L.Ed. 510 (1955); *Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1, 9, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *see generally* Murphy, *Old Maxims Never Die: The "Plain Meaning Rule" and Statutory Interpretation in the "Modern" Federal Courts,* 75 Colum. L.Rev. 1299 (1975).

Because Benoni failed to allege the cause of action that was approved by Congress in Private Law 98–9, the district court properly dismissed the petition in *Benoni III.*[7]

*Abuse of process*

Persistence, although often laudable, can become vexatious. Such has been the history of this action. This litany of litigation has abused the processes of the district court and of this court. We urge both appellant and his counsel not to continue to do so. *See* 28 U.S.C. § 1927; *Posadas de Puerto Rico v. Asociación de Empleados,* 821 F.2d 60 (1st Cir.1987); *Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468 (1st Cir.1985).

*Affirmed.*

---

7. While Chief Judge Campbell agrees with the court that Benoni has failed to allege facts sufficient to bring his claim within the sponsoring Congressman's remarks, he doubts that the statute as drafted can be confined to that narrow construction. He fears that a faithful reading of the statutory language permits only one conclusion: the statute would extinguish the res judicata effect of prior litigation between Benoni and the railroad. Such a legislative revision of a prior judgment is, of course, constitutionally impermissible. *See Hayburn's Case, supra.*