858 F.2d 427
 129 L.R.R.M. (BNA) 2588, 110 Lab.Cas. P 10,773
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO, Appellee,
v.
NORTHWEST AIRLINES, INC., Appellant.
NORTHWEST AIRLINES,
v.
The INTERNATIONAL ASSOCIATION OF MACHINISTS.
 No. 88-5006.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1988.
Decided Oct. 4, 1988.
 
 Timothy R. Thornton, Minneapolis, Minn., for appellant.
 Erwin A. Peterson, St. Paul, Minn., for appellee.
 Before LAY, Chief Judge, BROWN*, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Northwest Airlines, Inc. (Northwest) appeals from a district court[1] order granting summary judgment in favor of the International Association of Machinists and Aerospace Workers, AFL-CIO (the Union) and confirming a System Board of Adjustment (the Board) decision to assess a $15,724 penalty against Northwest for breach of the collective bargaining agreement. Northwest contends that the court erred in (1) determining that the Board had not exceeded the scope of its jurisdiction under the Railway Labor Act, 45 U.S.C. Sec. 153, First (q) (1982),[2] by directing, without explicit authorization in the collective bargaining agreement, payment of a penalty; (2) interpreting the Board's decision to include a finding that Northwest's conduct was willful and wanton; and (3) confirming a monetary award that the Union had not specifically requested. We affirm.
 
 I.
 
 2
 This case arises from Northwest's failure to provide training and establish additional positions for its equipment service repairmen as agreed in a June 30, 1983, Letter of Agreement (letter) entered into with the Union, the authorized representative of Northwest's mechanics and equipment service repairmen. The purpose of the training and staffing requirements was to safeguard the working conditions and security of Northwest's equipment service repairmen. The letter became part of the parties' collective bargaining agreement, incorporating the grievance procedure and the Board provisions established under the requirements of the Railway Labor Act, 45 U.S.C. Sec. 153.
 
 
 3
 After a year passed without any action by Northwest on its responsibilities under the letter, Tom Smith, an equipment service repairman, filed a grievance alleging that Northwest had not established the agreed-upon number of equipment service repairmen and had not provided the minimum forty hours of training per year for each of the equipment service repairmen. The remedy sought was to have Northwest comply with the letter.
 
 
 4
 The Board, composed of two union and two company members, unanimously decided that Northwest had breached the agreement:
 
 
 5
 1. The Board finds the Company in violation of the Letter of Agreement dated June 30, 1983, as it relates to the training requirements. A minimum of 40 hours training per year for each of the Equipment Service Repairmen was not provided. The Board hereby directs the Company to comply.
 
 
 6
 2. Further, the Board finds the Company is in violation of the June 30, 1983 letter in that the ten Equipment Service Repairmen positions established in the letter were not filled. At no time were there more than seven Equipment Service Repairmen employed.
 
 
 7
 Exhibit D.
 
 
 8
 In addition to ordering Northwest to comply with the staffing and training provisions of the letter, the Board imposed a $15,724 penalty against Northwest, to be divided among the equipment service repairmen as determined by their union local. The collective bargaining agreement did not specifically authorize punitive damages. After Northwest refused to comply with the Board's decision, the Union filed an application to confirm the award in state court. Northwest maintained that the award exceeded the Board's jurisdiction by impermissibly imposing a penalty and provided a remedy that the Union had not requested. Northwest removed the case to district court, citing jurisdiction under the Railway Labor Act, 45 U.S.C. Secs. 184 and 153, and moved to vacate the penalty portion of the award. The court granted the Union's motion for summary judgment and confirmed the award.
 
 II.
 
 9
 The scope of judicial review of adjustment board[3] awards under the Railway Labor Act is " 'among the narrowest known to the law.' " Benoni v. Boston and Maine Corp., 828 F.2d 52, 54 n. 3 (1st Cir.1987) (quoting Diamond v. Terminal Ry. Alabama State Docks, 421 F.2d 228, 233 (5th Cir.1970)). Courts may set aside board orders on three grounds: (1) the board's failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. See 45 U.S.C. Sec. 153, First (q); Union Pacific R.R. v. Sheehan, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam); Kansas City Terminal Ry., 587 F.2d at 905-06.
 
 
 10
 Relying on the second ground, Northwest contends that the Board exceeded the scope of its jurisdiction by awarding a penalty payment of $15,724 to the Union even though the collective bargaining agreement did not authorize assessment of a penalty for a breach of the agreement. Northwest argues that we need not give deference to the Board's determination that it could impose a penalty because courts, not arbitrators, determine the scope of a board's jurisdiction. See International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Republic Airlines, Inc., 829 F.2d 658, 662 (8th Cir.1987).
 
 
 11
 In enforcing the award, the district court reasoned that the term "penalty" in the Board's decision was ambiguous and that the case was analogous to United Elec., Radio and Mach. Workers of Am., Local 1139 v. Litton Microwave Cooling Products, Litton Systems, Inc., 728 F.2d 970 (8th Cir.1984) (en banc), in which we upheld an arbitration award of an extra week of paid vacation during the summer as compensatory, rather than punitive, damages. Id. at 972. We agree with Northwest, however, that the present case is distinguishable from Litton because the $15,724 award was not based on a calculated, compensable loss by the equipment service repairmen. Furthermore, the parties stipulated that the monetary award was a penalty. We therefore conclude that the Board assessed the monetary award as a penalty, which places before us the issue of the Board's jurisdiction to award a penalty.
 
 
 12
 We have not previously considered whether a penalty award that is assessed for breach of a collective bargaining agreement in the absence of compensatory loss flowing from the breach is enforceable under the Railway Labor Act when the collective bargaining agreement contains no specific provision authorizing punitive damages. We have determined, however, that an adjustment board award is enforceable as within the scope of the board's jurisdiction unless the award is " ' "without foundation in reason or fact." ' " Kansas City Terminal Ry., 587 F.2d at 906 (quoting Brotherhood of R.R. Trainmen v. Central of Georgia Ry., 415 F.2d 403, 414 (5th Cir.1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970)). We look to the language and purpose of the collective bargaining agreement to determine whether the award is " 'at least rationally inferable, if not obviously drawn,' " from the agreement. Id. (quoting Central of Georgia Ry., 415 F.2d at 412). The test of the board's jurisdiction is not whether we agree with the board's interpretation of the agreement, but " 'whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract.' " Id. at 906-07 (quoting Diamond, 421 F.2d at 233) (emphasis deleted). Stated another way, the award must draw its essence from the collective bargaining agreement. Walsh v. Union Pac. R.R., 803 F.2d 412, 414 (8th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3213, 96 L.Ed.2d 699 (1987).
 
 
 13
 The Union argues that under this extremely deferential standard the Board should be allowed to impose a penalty. It contends that the relatively small penalty the Board imposed is not only rationally explainable as a logical means of furthering the aims of the letter, but is absolutely essential to enforce it. Pointing out that Northwest had simply ignored its responsibilities to its equipment service repairmen for more than a year, the Union contends that Northwest violated the contract after calculating that the benefits of breaching the contract outweighed the costs, in that violations of training and staffing provisions do not necessarily give rise to traditional contract damages. The district court recognized that without the penalty award, Northwest "would face no downside risk from these breaches of its union contract." Mem. op. at 5.
 
 
 14
 Northwest responds, however, that an arbitrator cannot dispense his own brand of industrial justice, see United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), and that because the letter does not specifically authorize an award of punitive damages, the $15,724 award did not draw its essence from the collective bargaining agreement. Additionally, citing International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local Union 34, AFL-CIO v. General Pipe Covering, Inc., 792 F.2d 96, 100 (8th Cir.1986), Northwest maintains that punitive arbitration awards are generally disfavored.
 
 
 15
 General Pipe Covering, Inc. involved the enforcement of a private, contractual arbitration award authorized under section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185. In contrast, this is a compulsory arbitration case under the Railway Labor Act in which the dispute was submitted to a public board. General Pipe Covering, Inc. is therefore not dispositive.
 
 
 16
 There is a division of authority as to whether punitive awards under the Railway Labor Act are enforceable absent specific authorization in the collective bargaining agreement. Compare, Norfolk & W. Ry. v. Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, 657 F.2d 596 (4th Cir.1981) (no jurisdiction to enforce award of purely punitive pay), with Brotherhood of Ry., Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees v. St. Louis S.W. Ry., 679 F.Supp. 628 (E.D.Tex.1985) (enforcing award of pure penalty pay), aff'd, 820 F.2d 1222 (5th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 250, 98 L.Ed.2d 208 (1987).
 
 
 17
 In Norfolk & W. Ry., the company consolidated two freight yards, each of which employed chief clerks. The company abolished the chief clerk position that was fully covered by the collective bargaining agreement, which required that the position be filled by the most senior qualified union members who bid for it, and retained the other position, which could be filled by a person of the company's choosing. When the company appointed a person to the position without advertising the position for seniority bidding, the union challenged the action on behalf of one of its members. Although the person appointed was in fact the most senior qualified union member, the union contended that other clerks had been injured because they would not be entitled to bid for the position in the future.
 
 
 18
 The arbitration board recognized that the challenging employee had not suffered compensable damages because she would not have obtained the position even if the company had conducted seniority bidding. It nevertheless awarded punitive damages based upon the chief clerk's rate for 100 eight-hour days. 657 F.2d at 599. The district court agreed that the company had violated the collective bargaining agreement, but set aside the award of punitive damages. The Fourth Circuit affirmed, reasoning that no prior cases or board decisions supported an award of penalty pay:
 
 
 19
 [I]n all the cases decided under the Railway Labor Act that are cited by [the union], the courts merely upheld the award of compensatory damages in the form of the wages an employee would have earned had he been appointed to a position to which he was entitled under a collective bargaining agreement unmitigated by the earnings he made in the lower paying position that he continued to retain during the period of violation.
 
 
 20
 Id. at 602. Because the award to the challenging employee was totally punitive and not merely unmitigated compensatory damages, it was set aside. Id.
 
 
 21
 In St. Louis S.W. Ry., the arbitration board found that the company had violated the collective bargaining agreement by contracting out work to nonunion employees. 679 F.Supp. at 629. The named union employees did not prove compensatory damages. Although no provision of the agreement specifically authorized the award of penalty pay, the arbitration board awarded penalty pay based on "the whole cloth" of the agreement and on the past practices of the parties. Id. The district court enforced the award, relying on Brotherhood of R.R. Trainmen v. Central of Georgia Ry., 415 F.2d 403, 415 (5th Cir.1969), in which the Fifth Circuit enforced a board award to three trainmen, who had been reassigned after the company unilaterally changed the home terminal, of a full day's pay for every day that the change remained in effect, in addition to the employees' regular earnings. The Fifth Circuit reasoned that a punitive damage award draws its essence from the collective bargaining agreement, even in the absence of express terms providing for punitive damages, if the practice of the industry has been to grant such awards:
 
 
 22
 Custom and practice * * * are valid bases for fashioning remedies where the contract does not explicitly exclude them. When, therefore, bases in custom and practice are shown that support the particular principle of penalty pay applied in this case, the Act forecloses further judicial scrutiny of the principle.
 
 
 23
 Central of Georgia Ry., 415 F.2d at 416.
 
 
 24
 The district court in St. Louis S.W. Ry. concluded that the prior cases and board awards that had remedied violations by awarding double pay established that a penalty award is part of the railroad industry's custom and practice. 679 F.Supp. at 631. The court also noted that punitive awards encourage parties to resolve their differences through the grievance procedure and arbitration. Id. Recognizing that its decision to enforce an award of penalty pay conflicted with the Fourth Circuit's decision in Norfolk & W. Ry., the district court rejected the Fourth Circuit's "faulty assumption" that compensatory rather than punitive damages were involved in prior cases, noting that prior cases categorized the double pay awards as punitive damages. Id. at 632. See e.g., Central of Georgia Ry., 415 F.2d at 415 ("the Board surely did not * * * exceed its jurisdiction in awarding penalty pay"). The Fifth Circuit affirmed the district court's decision in an unpublished memorandum. 820 F.2d at 1222.
 
 
 25
 We agree with the Fifth Circuit that awards of double pay are more properly categorized as a penalty and are not merely unmitigated compensatory damages. Because past railroad industry practice has been to award punitive damages, we conclude that the Board did not exceed its jurisdiction under the Railway Labor Act in awarding the Union a $15,724 penalty payment for Northwest's breach of the training and staffing provisions of the letter.[4] The monetary award has a foundation in reason and fact because it was an incentive for Northwest, which had ignored its responsibilities for more than a year, to comply with the letter.
 
 III.
 
 26
 Northwest next contends that the district court erred in confirming the award of monetary damages because the Union did not request a penalty in its arbitration submission. Northwest relies on Kansas City Luggage & Novelty Workers Union, Local No. 66, AFL-CIO v. Neevel Luggage Mfg. Co., Inc., 325 F.2d 992 (8th Cir.1964), in which we affirmed the district court's decision setting aside an award of back pay because the question of reimbursement for lost time had not been submitted. Id. at 994. The question submitted was merely whether certain layoffs were improper.
 
 
 27
 The Union responds, however, that Kansas City Luggage is clearly distinguishable because there the employees' entitlement to back pay involved an interpretation of the collective bargaining agreement under which some of the employees might have been laid off anyway. Id. at 993. Entitlement to back pay was a separate contract interpretation issue that arguably should have been specifically submitted. Here, in contrast, the Board imposed a penalty to ensure that Northwest would comply with the letter. Although the Union had not specifically requested a penalty, it did request that Northwest comply with the agreement.
 
 
 28
 A board does not exceed the scope of the arbitration submission as long as it confines itself to the areas marked out for its consideration. Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, AFL-CIO & CLC, 706 F.2d 228, 231 (8th Cir.1983) (en banc). We are satisfied that the Board confined itself to the areas marked out for its consideration in determining that to grant the Union's request that Northwest comply with the letter, it was necessary to impose a penalty against Northwest.
 
 
 29
 The judgment is affirmed.
 
 
 
 *
 The HONORABLE JOHN R. BROWN, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 The Railway Labor Act, 45 U.S.C. Sec. 153, First (q), provides in pertinent part:
 The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.
 
 
 [3]
 Special boards of adjustment are authorized under 45 U.S.C. Sec. 153, Second, as an alternative to the thirty-four-member National Railway Adjustment Board, and are subject to the same standard of judicial review. Brotherhood of Ry., Airline and Steamship Clerks v. Kansas City Terminal Ry., 587 F.2d 903, 905 (8th Cir.1978), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979)
 
 
 [4]
 Because we conclude that penalty awards are generally enforceable under the Railway Labor Act, we need not reach the question whether the district court correctly ruled that implicit in the Board's decision was a finding that Northwest's conduct was willful and wanton