**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**TRANS WORLD AIRLINES, Defendant.**

No. 4:97CV3–DJS.

United States District Court,
E.D. Missouri,
Eastern Division.

Aug. 7, 1997.

Jerry J. Murphy, Laura Gerdes Bub, Murphy and Tobben, L.C., St. Louis, MO, Robert S. Clayman, Elise B. Schlackman, Guerrieri and Edmond, Washington, DC, for Intern. Assoc. of Machinists and Aerospace Workers.

Larry M. Bauer, Eric A. Todd, Stinson and Mag, St. Louis, MO, for Trans World Airlines, Inc.

### ORDER

STOHR, District Judge.

Plaintiff is the bargaining representative for flight attendants employed by defendant Trans World Airlines ("TWA"). Under the parties' collective bargaining agreement ("CBA") and the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, a System Board of Adjustment is established to resolve disputes under the CBA. On September 5, 1995, the union's predecessor [1] filed a grievance concerning whether TWA violated a "proportionality" provision of the parties' 1994 CBA by increasing the pay of non-contract and management employees without giving comparable increases to the union member flight attendants, after having obtained rescission of scheduled raises for flight attendants as part of TWA's 1994 financial reorganization. The grievance was submitted to the Board on November 17, 1995. After an evidentiary hearing on January 16 and 17, 1996, the Board rendered a decision in favor of plaintiff on November 11, 1996.

By letter of December 18, 1996, TWA indicated its intention not to comply with the Board's ruling pending an appeal to be filed in federal court. The union thereafter filed the instant complaint seeking enforcement of the Board's award. TWA responded with a counterclaim for vacation of the award on the grounds that the Board failed to confine itself to matters within the scope of its jurisdiction and issued an award without foundation in reason or fact and which does not draw its essence from the CBA. The matter is now before the Court on cross-motions for summary judgment, which the parties agree are sufficient to dispose of the case. Upon motion by TWA, the Court granted oral argument, which was heard on July 17, 1997.

The proportionality provision at issue in the CBA reads in pertinent part as follows:

The New IFFA CBA is effective only upon ... (ii) unless waived by IFFA, implementation of contract modifications before October 1, 1994, substantially proportional to IFFA's by the following three entities: (A) the Air Line Pilots Association ("ALPA"), (B) the International Association of Machinists and Aerospace Workers ("IAM"), and (C) the non-union, management and other employees on the Company's domestic payroll.

The union contends that this provision, designed to insure substantial proportionality among the concessions obtained by TWA from all four work groups in restructuring, was violated when TWA shortly afterward instituted a program of service-related "longevity" pay increases for the non-union and management group which was not also offered to the flight attendants. The Board agreed. Opinion and Award, pp. 10–11.

The standard of judicial review of a Board of Adjustment award is very narrow:

Courts may set aside board orders on three grounds: (1) the board's failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.

*Int'l Ass'n of Machinists v. Northwest Airlines,* 858 F.2d 427, 429 (8th Cir.1988). As TWA urges here, an award "without foundation in reason or fact" is considered to exceed the scope of the Board's jurisdiction, *see, e.g., Brotherhood of Railway, Airline and Steamship Clerks v. Kansas City Terminal Railway,* 587 F.2d 903, 906 (8th Cir.1978), as is an award which fails to "draw its essence from the collective bargaining agreement." *Northwest,* 858 F.2d at 430. Overall, the standard of review is an extremely deferen-

---

1. The flight attendants were formerly represented by a different union, the Independent Federation of Flight Attendants ("IFFA"). IFFA brought the instant action, but after certification of the new union ("IAM") as the flight attendants' representative, TAM was substituted for IFFA as the party-plaintiff.

tial one, and "[t]he test of the board's jurisdiction is not whether we agree with the board's interpretation of the agreement, but ' "whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract." ' " *Id.* (internal citations omitted). The standard of review is " 'among the narrowest known to the law.' " *Id.* at 429, *quoting Benoni v. Boston and Maine Corp.*, 828 F.2d 52, 54 n. 3 (1st Cir.1987).

Per agreement of the parties, the issues presented to the Board were as follows:

> Did the Company violate the provisions of the Working Agreement by instituting increases in pay for non-contract and management employees without affording increases in pay, on a comparable basis, to IFFA Flight Attendants under all facts and circumstances of this case? If so, what shall be the remedy?

As indicated above, the proportionality provision addressed the comparability of treatment afforded to four groups of employees, the pilots represented by ALPA, the machinists represented by IAM, the flight attendants then represented by IFFA, and "non-contract" employees. As the Board noted:

> In connection with the New IFFA CBA and the efforts to create conditions to permit emergence from a second bankruptcy period, IFFA agreed to forego a 15 percent salary "snapback" payment to recoup an earlier pay concession, as well as previously negotiated wage raises on September 1, 1995, September 1, 1996, and August 30, 1997. At the same time, ALPA and IAM made "comparable" concessions, and the Company instituted savings in reference to non-contract employee compensation. In place of these concessions, the Company negotiated with the three Unions and imposed for the non-contract employees, a schedule of one percent salary increases on May 1 and October 1, 1995; May 1 and October 1, 1996; and May 1, 1997. These increases are to be followed by a three percent pay increase on August 31, 1997.

Opinion and Award, p. 5.

██ The program of longevity increases for non-contract employees was announced on August 25, 1995, two days after TWA's emergence from bankruptcy on August 23, and was expressly additional to the scheduled increases described above applicable to all four employee groups. The Board found that TWA:

> altered the "substantially proportional" modifications, initially acceptable to all concerned, when it reversed some or all of the reductions imposed on non-contract employees by introducing at the earliest possible moment the means for semi-annual upward salary adjustment for the same group.

*Id.* at 10. Furthermore, the Board concluded that:

> The parties could not have meant that concessions should be accepted or imposed simply for the moment of preparing a reorganization plan and then should be altered at the earliest possible opportunity. The granting of a program of service-related salary increases to one group, *in addition to* the series of one percent raises applicable to all groups, is not in harmony with the serious commitments made by the *Company and the three Unions in* [the proportionality provision].

*Id.* at 10–11. Viewed under the standards applicable to this judicial review of the Board's award, the Court finds that the Board's determination is premised upon a rational interpretation of the proportionality provision which is intended to further the aims of the CBA, and that the decision cannot be said to fail to draw its essence from the CBA. The Court here briefly addresses each of TWA's principal arguments.

TWA contends that the Board mistakenly considered the non-contract pay increase to be a restoration of a prior salary reduction imposed upon that group of employees, when that group's relevant "concessions" were only in the form of head-count reductions. The testimony and evidence offered before the Board supported a conclusion that in 1992, TWA imposed a 15% pay reduction on non-contract employees. *See* Transcript, pp. 45–46; Union Exh. No. 6; Union Exh. No. 11, pp. 31–32. In addition, as further discussed below, the record before the Board indicated the existence of a dispute of fact concerning

the nature of the flight attendants' and non-contract employees' relevant concessions—specifically, whether they concerned salary or head count. On this record, the Board reasonably concluded that both employee groups had experienced salary reductions which were unilaterally restored by TWA only to the non-contract group. The record before the Board does not support a finding that the Board's award was without basis in reason or fact for the reason urged by TWA.

TWA further asserts that the pay increase awarded to the non-contract/management group, even if considered to restore a concession that group had earlier made, was not disproportionate treatment because plaintiff's major concession had been in the form of head-count reductions, which by the time of the challenged pay increase had been reversed in that TWA had re-hired the furloughed flight attendants. On the evidence presented to the Board, its finding that plaintiff had granted considerable salary concessions—forfeiting the 15% "snapback" as well as previously negotiated wage raises on September 1, 1995, September 1, 1996, and August 30, 1997—cannot be deemed erroneous. See, e.g., Transcript, pp. 57–58, 77, 138–41; Union Exh. 15, pp. 124–25, 306.

The Board also heard testimony from TWA witnesses concerning labor cost savings through head count reductions of flight attendants. See Transcript, pp. 132–34, 169. It appears that because such reductions were available to TWA "outside" the parties' CBA, the union does not consider them a concession relevant to the proportionality provision. Id. at 132. From TWA's point of view, because many of the furloughed flight attendants were later recalled, the head count reduction was ultimately largely reversed with little savings to TWA. Id. at 135, 169. The clash of these perspectives figures prominently in the current dispute as argued to the Court. The Board's implicit adoption of the union's perspective on this issue is not inconsistent with the evidence presented to the Board, and is not otherwise subject to reversal by this Court under the applicable standard of review. That finding reasonably supports the Board's determination that the additional wage increases granted to the non-contract employees were disproportionate to the flight attendants' waiver of substantial salary increases, particularly where the record before the Board indicates the existence of a dispute of fact as to the actual savings to TWA from the furlough and later recall of flight attendants. Transcript, pp. 213–14.

TWA argues that the Board failed to take into account the overall course of dealing between TWA and the various work groups (the "common law of the plant"), which included for each group numerous amendments to work rules and benefits without challenges as to proportionality. In the Court's view, TWA's contention, even if true, is a general one which does not bear directly on the pertinent issue, namely whether the particular pay increase to non-contract workers challenged here was substantially disproportional to TWA's treatment of, and the concessions previously made by, the flight attendants' union.

Next, defendant contends that the Board erroneously interpreted the proportionality provision to require identical treatment, rather than merely proportional treatment viewed in light of the different types of concessions previously made by the different groups. The Court readily rejects this as a mischaracterization of the Board's reasoning and opinion. Several times the Board opinion refers to the comparable treatment of the four employee groups as proportional, but not identical. See, e.g., Opinion and Award, pp. 3, 4, 9, & 12. Furthermore, in formulating a remedy, the Board explicitly rejects a reading of the proportionality provision as requiring identical treatment of the various groups. Id. at 13.

TWA also argues that the plain language of the proportionality provision limits its application to evaluation of the proportionality of the various work groups' concessions as of October 1, 1994 as a condition precedent to the initial effectiveness of plaintiff's new CBA. This is one possible interpretation of the language of the provision. The Board found a different interpretation more persuasive, namely that the provision required proportionality among the four employee groups not merely for a particular moment but over the "measurable period" of the life of the

CBA. Opinion and Award, p. 11. Particularly under the applicable deferential standard of review, the Court cannot say that the Board's construction of the proportionality provision is not " ' "rationally explainable as a logical means of furthering the aims of" ' " the parties' agreement. *Northwest,* 858 F.2d at 430.

■ The Court has carefully considered each of TWA's arguments challenging the Board's opinion and award, and finds each to fail to persuade the Court that the award was without foundation in reason or fact or otherwise exceeded the scope of the Board's jurisdiction. The Court will therefore grant summary judgment in favor of plaintiff, affirming and enforcing the Board's award. In addition, plaintiff's complaint requests that the Court award prejudgment interest on the back-pay owed pursuant to the award. Plaintiff's motion for summary judgment fails to address or support this request. Because prejudgment interest is not provided for in the Board's Opinion and Award, it will not be added here in the absence of any argument and authority in favor of doing so. IFFA's and IAM's potential entitlement to attorney's fees and costs will not be considered at this time, but is subject to consideration in the event of the filing of appropriate motions for attorney's fees in accordance with E.D.Mo. L.R. 8.02 and appropriate bills of costs in accordance with E.D.Mo. L.R. 8.03.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. # 8] is granted.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [Doc. # 18] is denied.