**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, et al., Defendants.**

**No. 8:CV91–00392.**

United States District Court, D. Nebraska.

June 12, 1992.

Kathleen J. Ford, Union Pacific Law Dept., Omaha, Neb., for plaintiff.

Robert E. O'Connor, Jr., O'Connor & Associates, Omaha, Neb., Clinton J. Miller, III, United Transp. Union, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on plaintiff Union Pacific Railroad Company (hereinafter "Union Pacific") and defendants United Transportation Union (hereinafter "United") and Kent Madison's cross-motions for summary judgment (Filing Nos. 12 and 13). Union Pacific filed this action pursuant to 45 U.S.C. § 153, First (q), seeking to review and set aside an arbitration award. United and Madison filed a counterclaim, seeking enforcement of the same arbitration award. Jurisdiction of the Court is premised upon 28 U.S.C. §§ 1331 and 1337.

The facts underlying this controversy are not in dispute. On January 9, 1989, Madison was employed by Union Pacific as a brakeman. At approximately 10:50 p.m. on that date, Union Pacific's manager of training and industrial operations, W.R. Lake, heard a radio communication concerning a run-through switch. As part of an investigation, Lake met with crew members about the incident, and upon questioning, Madison admitted that he had improperly lined a switch against the movement of the train, causing two and a half cars to go through the switch, resulting in its damage.

Madison was sent to Laramie County Memorial Hospital for a reasonable-cause toxilogical test pursuant to federal regulations, see 49 C.F.R. § 219.301, and was informed that he was being removed from

service pending the results of the tests. The results of the test indicated that Madison tested positive for alcohol, cocaine, and marijuana.

On January 13, 1989, Madison received a notice of hearing to investigate possible violations of Union Pacific Railroad rules, including Rule G, an industry-wide operating rule forbidding the use of drugs and alcohol on the job. On January 17, 1989, an investigation hearing was held before a hearing officer in Cheyenne, Wyoming, to determine whether charges against Madison should be sustained. On January 24, 1989, Madison was notified the charges against him were sustained and that he was dismissed from service for violating Rule G.

The Union appealed on Madison's behalf, and the dispute was ultimately heard by a Public Law Board, which found that Madison did not receive a fair hearing prior to being disciplined. In the opinion of a majority of the Public Law Board, the hearing officer did not confine his inquiry to the matters contained in the January 13, 1989, notice. Specifically, a majority of the arbitrators found that because the hearing officer verbally noted that Madison reeked of alcohol and because the hearing officer brought in two other hearing officers to determine if they could detect alcohol on Madison, the hearing was unfair. A majority of the Public Law Board stated that the hearing officer, in noting that Madison reeked of alcohol, abandoned his role as a factfinder and, therefore, denied Madison a fair hearing guaranteed by the collective bargaining agreement between United and Union Pacific.

Although a majority of the Public Law Board found that Madison did not receive a fair hearing before the hearing officer, it sustained the lost time and lost pay penalty imposed by the hearing officer for the improper alignment of the switch. Union Pacific was ordered to return Madison to service with full rights and pay for all lost time, except for ninety (90) calendar day's

pay assessed for improper aligning and the resulting damage to the switch. Madison's reinstatement was conditioned upon his successfully passing all the back-to-work examinations.

Union Pacific filed a dissent to the Public Law Board's majority opinion, asserting that the award violated public policy because the majority ordered back to work a proven user of alcohol and drugs. In addition, Union Pacific maintained that it was inconceivable that the board could find that the hearing was procedurally correct when sustaining the ninety-day (90) discipline for improperly throwing the switch, but procedurally deficient when addressing the Rule G violation. Rather than reinstate Madison, Union Pacific filed this action.

Union Pacific moves for summary judgment, maintaining that the arbitrators' decision should be vacated because the Public Law Board's decision is contrary to public policy.[1] United maintains that there is no public policy exception which would allow this Court to set aside the Public Law Board's decision and that, as a matter of law, the Public Law Board's decision should be upheld.

■ Summary judgment is proper if there is no genuine issue of material fact, and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c). However, the scope of judicial review of adjustment board awards under the Railway Labor Act is among the narrowest known to the law. *International Assoc. of Machinists & Aerospace Workers v. Northwest Airlines*, 858 F.2d 427, 429 (8th Cir.1988) (quoting *Benoni v. Boston & Maine Corp.*, 828 F.2d 52, 54 n. 3 (1st Cir.1987) in turn quoting *Diamond v. Terminal Ry. Alabama State Docks*, 421 F.2d 228, 233 (5th Cir.1970)). Courts may set aside board orders on three grounds: (1) the board's failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153, First (q); *Union*

---

1. Union Pacific alternatively argues that the Public Law Board exceeded its jurisdiction. Given the disposition of this action, the Court need not address plaintiff's alternative argument.

*Pacific R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam); *Northwest Airlines*, 858 F.2d at 429.

As the United States Court of Appeals for the Eighth Circuit stated in *Iowa Electric Light & Power Co. v. Local Union 204 of Int'l Bhd. of Electrical Workers*, 834 F.2d 1424 (8th Cir.1987), "[t]his court has resisted the temptation to tamper with labor awards that we might have decided differently were we the arbitrator, and we have consistently observed that '[j]udicial review of an arbitrator's award is extremely limited * * *.'" *Id.* at 1426 (quoting *Manhattan Coffee Co. v. International Bhd. of Teamsters, Local No. 688*, 743 F.2d 621, 624 (8th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2323, 85 L.Ed.2d 842 (1985)). The decision of an arbitrator who has not exceeded his contractual authority is almost always upheld. *Id.*

■ One of the exceptions to the requirement that courts defer to the awards of arbitrators, however, is the now-well-settled rule that a court need not, in fact, cannot enforce an award that violates public policy. *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir.1989), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). "If the contract as interpreted by [the arbitrator] violates an explicit public policy, [courts] are obliged to refrain from enforcing it." *Iowa Electric Light & Power*, 834 F.2d at 1427 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)).

■ Once a public policy question is raised, a court must address it by taking the facts as found by the arbitrators, but reviewing its conclusions *de novo*. *Id.* Most importantly, considerations must be based only on public policy that is "well defined and dominant, and * * * ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interest.'" *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). The critical inquiry is not whether the underlying act for which the employee was disciplined violates public policy, but whether there is a public policy barring reinstatement of an individual who has committed wrongful acts. *Stead Motors*, 886 F.2d at 1215 (citing *Grace*, 461 U.S. at 766, 103 S.Ct. at 2183, and *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

■ The Court has no difficulty in concluding there is a well-defined public policy against drug and alcohol use in the railroad industry and, more importantly, against reinstating railroad employees in safety sensitive areas whose abuse of drugs and alcohol has jeopardized the safety of the general public and fellow employees. Pursuant to the Federal Railroad Safety Act of 1970, the Secretary of Transportation was authorized to prescribe, as necessary, appropriate rules, regulations, and standards for all areas of railroad safety. 45 U.S.C. § 431(a). In response to drug and alcohol abuse by railroad employees who posed a serious threat to safety, the Federal Railroad Administration issued drug testing regulations in 1985, which were implemented to prevent accidents and casualties in railroad operations that were the result of alcohol and drug abuse by employees. 49 C.F.R. § 219.1. These regulations call for drug and alcohol testing on a pre-employment, reasonable cause, post-accident, and post-incident bases. 49 C.F.R. §§ 219.201, 219.301 and 219.501. Federal Railroad Administration regulations also require railroad employees to submit to toxicological testing after: train accidents resulting in a fatality; the release of hazardous materials accompanied by an evacuation or an injury; damage to railroad property of $500,000 or more; unique "impact accidents" that result in a reportable injury or $50,000 in damages; or any train incident that results in the death of on-duty railroad employees. 49 C.F.R. § 219.201. In addition, testing of railroad workers is authorized after observation of certain behavior patterns, negligent acts or omissions, or violations of

company safety or operating rules. 49 C.F.R. § 219.301.

Rule G, as promulgated by Union Pacific in 1989, bars employees from using alcohol when on duty, on company property, or when subject to duty. In addition, Rule G prohibits the use of any drug, narcotic, or controlled substances at any time either on or off duty. Significantly, the Federal Railroad Administration codified the rules under Rule G, by prescribing substantially identical rules as a matter of federal law. *See* 49 C.F.R. § 219.101 and 219.102.

In addition to declaring the general proscription of drug and alcohol abuse in the railroad industry as a whole, the Federal Railroad Administration has, more specifically, prescribed regulations directed at actions which a railroad must take once it learns that an employee has tested positive for drugs or alcohol. 49 C.F.R. § 219.104. "If the railroad determines there is a reason to believe that an employee has violated [federal regulations regarding the proscription of drug and alcohol use] as evidenced by a positive test result * * *, the railroad shall immediately remove the employee from covered service." 49 C.F.R. § 219.104(a). Furthermore, an employee who has tested positive for drugs or alcohol shall not be returned to service unless the employee has been evaluated to determine whether he is affected by a psychological or physical dependence on alcohol or controlled substances, has successfully completed a program of counseling or treatment, and has tested negative for controlled substances or alcohol. 49 C.F.R. § 219.104(d)(1)–(3).

■ In sum, the Court concludes that there is ample congressional and administrative proscription of drug and alcohol use within the railroad industry for the Court to conclude that there is a strong, well-defined policy against drug and alcohol use by railroad employees sufficient to set aside an arbitrator's award which reinstates a railroad employee whose use of alcohol or drugs has jeopardized the safety of the general public and fellow employees.

The Court must next turn to the question of whether the Public Law Board's decision in this matter violated this clearly established public policy. United does not dispute that the Public Law Board ordered the reinstatement of a employee who, after submitting to toxicological testing, was found to have cocaine, marijuana, and alcohol in his system. However, the Court's inquiry is complicated by the fact that the Public Law Board's decision was based upon a perceived procedural defect in the hearing conducted by Union Pacific's hearing officer. Once a majority of the Public Law Board determined that the hearing was procedurally defective under the collective bargaining agreement, it did not reach the merits of the hearing officer's decision on the alleged Rule G violations.

Section 153, First (q) of Title 45 of the United States Code provides that the Court shall have jurisdiction to "affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct." 45 U.S.C. § 153, First (q). In the interests of justice, and in furtherance of the clearly defined public policy against the use of drugs and alcohol in the railroad industry and against reinstating railroad employees who use alcohol or drugs, the Court will remand this action to Public Law Board No. 4689, with directions to vacate its award of reinstatement and to order that another hearing be scheduled for K.H. Madison before a hearing officer in accordance with the terms of the collective bargaining agreement between United and Union Pacific. An order in conformity with this memorandum opinion will issue this date.