**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION (C & T) and Bedell Gray, Defendants.**

**No. 8:CV 92–499.**

United States District Court,
D. Nebraska.

April 2, 1993.

Kathleen J. Foro, Omaha, NE, for plaintiff.

Kevin C. Brodar, Cleveland, OH, Robert E. O'Connor, Jr., Omaha, NE, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter comes before the court on plaintiff Union Pacific Railroad Company's (hereinafter "Union Pacific") and defendants United Transportation Union (hereinafter "the Union") and Bedell Gray's cross motions for summary judgment. (Filings 9 and 10). Union Pacific filed this action for judicial review of an arbitration award pursuant to 45 U.S.C. § 153, First (q). UPRR is asking that this court set aside the arbitration award. The Union and Gray filed a counter-claim seeking enforcement of the same arbitration award.

## I. FACTUAL BACKGROUND

On October 24, 1990, defendant Bedell Gray was working as a brakeman for Union Pacific in "through freight" service from Memphis to North Little Rock, Arkansas. (Filing 1 at ¶ 6). Upon his arrival in North Little Rock, defendant Gray was required to submit a urine sample for a random drug test pursuant to Federal Railroad Administration regulations. (Id.).

On November 1, 1990, defendant Gray was notified that the results of his drug test indicated a positive result for cocaine. (Id. at ¶ 7). As a result of the positive drug test

results, Gray was served with a notice of formal investigation, which was to be held on November 9, 1990. The investigation was to be held to develop facts and place responsibility, if any, in connection with Gray's alleged violations of Rule G of the Uniform Code of Operating Rules [1] and Union Pacific Railroad Drug and Alcohol Policy, effective January 6, 1990. (Id. at ¶ 8). Gray was also notified that he was being withheld from service pending the outcome of the investigation. (Id.).

After several postponements, Gray's formal investigation was finally conducted on December 14, 1990. (Filing 1 at ¶ 9). Defendant Gray was present at the hearing and was accompanied by two union representatives, Local Chairperson E.C. Wilbourn, and H.L. Porter. At the beginning of the hearing, however, the Hearing Officer told Gray that the collective bargaining agreement provided that defendant Gray could only be aided at the hearing by one representative, not two. Wilbourn objected on Gray's behalf and there was then a lengthy debate as to whether Gray should be able to receive representation from two individuals. (Filing 2, Exhibit 1 at 4–11). The Hearing Officer ultimately directed defendant Gray to choose one representative. (Id. at 10–11). Gray selected Wilbourn, and, after it was determined that Porter would not be providing any testimony, the Hearing Officer requested Porter to leave. (Id.). The investigation/hearing then went forward.

Based on the evidence developed at the hearing, Union Pacific found Gray to be in violation of Rule G and the Union Pacific Railroad Drug and Alcohol Policy and discharged him from service. (Filing 1 at ¶ 9). The Union appealed on Gray's behalf, and the matter was ultimately submitted for arbitration before a Public Law Board. The Union based its appeal on three procedural objections: (1) the cancellation and rescheduling of the November 30 hearing was improper; (2) the Carrier denied Gray his right to confront and cross-examine his accuser

---

1. Rule G is an industry wide rule prohibiting employees from using alcohol on duty or subject to duty or on Company property. Rule G also prohibits the illegal use, possession, manufac-

ture, distribution, dispensation, or transportation of any drug or controlled substance at any time. (Filing 8, Exhibit D),

because it did not produce a representative from the testing laboratory at the hearing; and (3) the Carrier prevented Gray from obtaining proper representation by refusing Gray dual representation by Wilbourn and Porter. (Filing 2, Exhibit 1 at p. 3–4).

After review of the record on appeal, the Board determined that it would not be necessary to address the first two grounds for appeal in that determination of the third ground was dispositive of the matter. The Board found that the dismissal of union member Porter from the investigation "fatally tainted the proceedings", which was of such a serious nature that it required a reversal of the guilty verdict and imposition of discharge. (*Id.* at p. 4). They noted that an ambiguity existed with regard to the word "representative" as it appeared in the bargaining agreement, but that the ambiguity[2] was clearly resolved by the past practice on the property which allowed more than one representative.[3] More specifically, the panel found:

> [T]he Hearing Officer's decision not only violated the letter and spirit of the Discipline Agreement as it has been interpreted and applied by the Parties for many years, but also actually deprived Claimant of representation necessary to the adequate presentation of his case in the investigation.

2. The Board noted that "[t]he language of paragraphs 2 and 4 of the Discipline Agreement arguably contain a latent ambiguity or inconsistency regarding numbers of allowable representatives, since paragraph 2 uses the singular word "representative", whereas paragraph 4 uses the plural "representatives". (Filing 2, Exhibit 1 at 12).

3. As the Board noted, "as the Organization has amply demonstrated, any ambiguity has been dispelled by years and years of past practice under which accused Employees have on many occasions designated more than one representative and or the representatives he designated have been assisted by others in putting forth the defense of the accused employee. Moreover, the Hearing Officer in this particular case was fully apprized of that practice in advance of the December 14, 1990 hearing. For reasons not clear on this record, he chose to disregard good advice and instead followed a new 'hard ball' interpretation of the Discipline Agreement." (*Id.* at 12).

4. The Rule G R/E Program allows employees with drug or alcohol substance abuse problems a chance to rehabilitate themselves and successfully return to service. This program is part of an agreement between the Carrier and the UTU and

Accordingly, the Hearing Officer's proven violation of the Discipline Agreement fatally tainted the proceedings and requires reversal of the discharge action based thereon. (Filing 2, Exhibit 1 at 13).

The Board explained that it needed to "fashion an appropriate remedy" for the fatal procedural violation committed by the Hearing Officer noting that although it had found that the Carrier could not rely on the investigation to support Gray's discharge that the Board could not, "in good conscience restore to train service without safeguards and qualifications a man reasonably suspected of cocaine use, if not cocaine addiction." (*Id.*).

The Board then awarded Gray back pay from November 2, 1990 "through to the date when Carrier offers [Gray] participation in the Rule G R/E Program."[4] (*Id.*) If Gray rejected the offer to participate in the Rule G R/E Program, the rejection was to be deemed a voluntary resignation from service. If Gray accepted the offer to participate in the Program, his reinstatement to service was to be governed by the terms of the Memorandum Agreement of July 29, 1985. Union Pacific objects to the award alleging that Gray was not eligible for the program in that he had previously participated in the Rule G R/E Program in 1988.[5]

is commonly referred to as the "Companion Agreement." The Companion Agreement permits certain employees who have been dismissed from service as a result of a Rule G violation to participate in a twelve-month rehabilitation and education program. The program provides that it is limited to employees dismissed for a Rule G violation provided: (1) that the employee has had no Rule G offenses in his or her record for at least ten years; (2) the employee has not participated in the Rule G R/E Program for at least ten years; and (3) the incident giving rise to the dismissal did not involve significant rule violations other than Rule G.

5. The Award states that "[f]or purposes of this case only, and without precedent or prejudice in future cases, Claimant's 1985 participation in the Rule G R/E Program shall not be deemed a bar to his participation in accordance with this Award." (Filing 2, Exhibit 1 at p. 14). Union Pacific notes in its brief that the Award mistakenly states that Gray's prior participation was in 1985, but that "[r]egardless of this error, Gray would still be ineligible to participate in the Rule G R/E Program." (Plaintiff's Brief in Support of Motion for Summary Judgment at p. 6).

As the facts underlying this controversy are apparently not in dispute, the parties have agreed that this matter is most efficiently resolved by the filing of cross motions for summary judgment. Summary judgment is proper if there is no genuine issue of material fact, and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c).

Union Pacific moves for summary judgment maintaining that the Board's decision should be vacated because it is contrary to public policy. In the alternative, Union Pacific argues that the Board's decision must be overturned because the Board exceeded its jurisdiction. The Union and Gray argue that there is no public policy exception which would allow this court to set aside the Board's decision and that as a matter of law, the Board's decision should be upheld.

## II. ANALYSIS

### A. Standard of Review—Public Policy Exception

■ The requirement of grievance arbitration through Boards of Adjustment, and judicial review thereof, are specifically addressed in the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. (1988). Section 184 of Title 45 provides that disputes between an employee and a carrier which arise out of grievances, or out of the interpretation or application of agreements regarding rates of pay, rules, or working conditions may be referred by petition of the parties or by either party to an appropriate adjustment board. The RLA further provides that Board awards "shall be final and binding upon both parties to the dispute", 45 U.S.C. § 153 First (m), and that in reviewing an arbitration decision under the RLA, a district court "may not ... set aside [an award] except for failure of the [Board] to comply with the requirements of [law], for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction, or for fraud or corruption by a member of the [Board] making the order." 45 U.S.C. § 153 First (q). This standard has been described by courts as "amongst the narrowest known to the law." *International Association of Machinists & Aerospace Workers v. Northwest Air-* *lines*, 858 F.2d 427, 429 (8th Cir.1988) (citations omitted). As the Supreme Court has stated:

Characterizing the issue presented as one of the law, as the Court of Appeals seemed to do here, does not alter the availability or scope of judicial review: The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided in 153 First(q), which unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties' and may be set aside only for the three reasons specified herein. **We have time and again emphasized that this statutory language means just what it says."** (*Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, at 93, 99 S.Ct. 399, at 402, 58 L.Ed.2d 354 (emphasis added)).

In *Sheehan,* an employee was discharged for violating a work rule. The employee filed a wrongful discharge suit in state court. During the pendency of the employee's case, the Supreme Court decided *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), wherein the Court held that an employee alleging a contract violation was required to submit the matter to an adjustment board. After that decision, the employee and carrier agreed to dismiss the state action and the employee then began proceedings before the Adjustment Board. The Board dismissed the claim due to the fact that the employee had failed to file his claim within the allotted time specified in the bargaining agreement. The employee then filed an action in federal district court arguing that the time limit had been tolled during the state action and therefore, he should be allowed to have his claim heard by the Adjustment Board.

Although the district court upheld the Board's ruling, the Tenth Circuit Court of Appeals reversed the ruling on the basis that the Board had deprived Sheehan of his due process rights. As indicated above, however, the Supreme Court rejected the Tenth Circuit's attempt to expand a court's ability to review an Adjustment Board's decision. Al-

though the Court could have easily extended a court's ability to review an adjustment board award on the very fundamental right to due process, it declined to do so, stressing that Congress had established only three grounds for review. The Court went on to explain that:

A contrary conclusion would ignore the terms, purposes and legislative history of the Railway Labor Act. In enacting this legislation, Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. *See Gunther v. San Diego & A.E.R. Co.,* [382 U.S. 257, [86 S.Ct. 368, 15 L.Ed.2d 308] (1965) ]; *Slocum v. Delaware, L & W.R. Co.,* 339 U.S. 239, [70 S.Ct. 577, 94 L.Ed. 795] (1950). The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. *Union Pacific R. Co. v. Price,* [360 U.S. 601, 611 [79 S.Ct. 1351, 1357, 3 L.Ed.2d 1460] (1959) ]; *Elgin J. & E.R. Co. v. Burley,* 327 U.S. 661, 664 [66 S.Ct. 721, 722, 90 L.Ed. 928 (1946) ]. Congress considered it essential to keep these so-called "minor" disputes within the Adjustment board and out of the courts. *Trainmen v. Chicago, R. & I. Co.,* 353 U.S. 30, 40 [77 S.Ct. 635, 640, 1 L.Ed.2d 622] (1957). The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. Normally finality will work to the benefit of the worker: He will receive a final administrative answer to his dispute; and if he wins, he will be spared the expense and effort of time-consuming appeals which he may be less able to bear than the railroad. *Union Pacific R. Co. v. Price, supra,* at 613–14 [79 S.Ct. at 1358]. Here, the principle of finality happens to cut the other way. But

evenhanded application of this principle is surely what the Act requires. *Sheehan, supra* at 94 [99 S.Ct. at 402.]

In its brief in support of its motion for summary judgment, Union Pacific acknowledges that a federal district court's review of a Board's decision is limited in scope and cites to *Sheehan* in support of that proposition.[6] Union Pacific contends, however, that arbitration awards are also subject to review by a federal court if enforcement of the award would violate public policy. It cites to two Supreme Court cases as standing for this proposition, *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) and *W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). In *Misco,* the Court stated that a court's refusal to enforce an arbitration award because it is contrary to public policy is "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Id.* at 42, 108 S.Ct. at 373 (citing *W.R. Grace, supra* at 766, 103 S.Ct. at 2183).

However, neither *Misco* nor *W.R. Grace* are cases arising under the RLA. Rather, both cases arise under the National Labor Relations Act ("NLRA"). NLRA cases are not necessarily controlling in situations governed by the RLA. In *Railroad Trainmen v. Terminal Co.,* 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969), the Supreme Court stated

The Court has in the past referred to the NLRA for assistance in construing the Railway Labor Act, . . . and we do so again here. . . .

It should be emphasized from the outset, however, that the National Labor Relations Act cannot be imparted wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly, with due regard for the many differences between the statutory schemes.

More recently, in *Air Line Pilots Ass'n, Intern. v. O'Neill,* 499 U.S. 65, 111 S.Ct.

---

**6.** Union Pacific states that "[a]lthough this review is quite limited in scope, review is proper on the following grounds: (1) failure of the Board to conform or confine itself to matters within the scope of its jurisdiction; or (3) fraud or corruption of a Board member." (Plaintiff's Brief in Support of Motion for Summary Judgment at 6 (citing 45 U.S.C. § 153, First (q))).

1127, 113 L.Ed.2d 51 (1991), the court criticized the court of appeals for relying solely on NLRA cases in a case involving the RLA stating: "[t]he court relied for the latter proposition solely on our cases interpreting the NLRA.... We have made clear, however, that NLRA cases are not necessarily controlling in situations, such as this one, which are governed by the RLA." *Id.* at ——, 111 S.Ct. at 1137.

In addition, I think it is interesting to note that neither *Misco* nor *W.R. Grace* contain any reference or citation to *Sheehan.* In both cases, the Court identifies the deferential standard of review given to an arbitrator's award, but cite to *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), as opposed to *Sheehan.*[7] The Court then goes on in each case to discuss the public policy exception to the deferential standard of review stating that "[a]s with any contract, however, a court may not enforce collective bargaining agreement that is contrary to public policy." *W.R. Grace, supra* at 766, 103 S.Ct. at 2183 (citing *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–53, 92 L.Ed. 1187 (1948) and *Misco, supra* at 42, 108 S.Ct. at 373 (citing *W.R. Grace* ).

On the other hand, *Sheehan* never. makes reference to or cites to *Steelworkers.* Rather, the Court cites 45 U.S.C. § 153 First (q) in relation to the grounds for judicial review and identifies the three grounds previously discussed stating that "[o]nly upon one or more of these bases may court set aside an order of the Adjustment Board" citing *Andrews, supra* at 325, 92 S.Ct. at 1565 and *Locomotive Engineers v. Louisville & Nashville R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). More importantly, the Supreme Court recently reiterated that judicial review of the "arbitral decision" under the RLA is limited, and cited to *Sheehan. See, Consol. Rail Corp. v. Railway Labor Executives,* 491 U.S. 299, 304, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989).

Based on the above discussion, I am compelled to find that I cannot undertake a review the adjustment board's award on a claim that the award violates public. policy as this claim does not fall within the three statutory grounds identified in 45 U.S.C. § 153 First (q). Although the Supreme Court has identified a public policy exception in relation to the NLRA, I am not convinced that the Supreme Court has ever intended to extend a district court's ability to review an adjustment board award beyond the three statutory grounds enumerated in section 153.[8]

## B. Board's Award—In Excess of Board's Jurisdiction?

The plaintiff also argues that when the Board ordered Union Pacific to offer Gray an opportunity to participate in the Rule G R/E Program pursuant to the Companion Agreement that the Board exceeded its jurisdiction. This is one of the 3 statutory grounds for review allowable under section 153.

Union Pacific contends that the provisions of the agreement bar Gray from participation in the program since Gray had previously. participated in the program, and that therefore, the Board's award which required UPRR to allow Gray to participate in the program changed the provisions of the agreement which was not within the scope of the jurisdiciton of the Board. (Plaintiff's Brief in Support of Motion for Summary Judgment at 30).

■ The controlling standard for determining whether an arbitrator has exceeded his jurisdiction is whether the award is "without foundation in reason or fact." *BRAC v.*

7. In *Misco,* the Court sets forth that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Id.* at 36, 108 S.Ct. at 369–70 (quoting *Steelworkers, supra* at 596, 80 S.Ct. at 1360).

8. It is for this reason that I respectfully disagree with Judge Strom's conclusion that there is a public policy exception under the RLA. *See, Union Pacific Railroad Co. v. United Transportation Union,* 794 F.Supp. 891 (D.Neb., 1992). I also find that I am not bound to follow *Iowa Electric Light and Power Co. v. Local Union 204, IBEW,* 834 F.2d 1424 (8th Cir.1987), the Eighth Circuit case cited by the plaintiff in support of a public policy exception, in that this case arises in relation to the NLRA and not the RLA.

*Kansas City Terminal Ry.*, 587 F.2d 903, 906 (8th Cir.1978) (citing *Brotherhood of Railroad Trainmen v. Central of Georgia Ry. Co.*, 415 F.2d 403, 414 (5th Cir.1969), *cert. denied*, 396 U.S. 1008 (1970).

> In the arbitration context, an award "without foundation in reason or fact" is equated with an award that exceeds the authority or jurisdiction of the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction. *BRAC, supra* at 906 (quoting *Brotherhood of Railroad Trainmen, supra* at 411–412).

"This test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract." *BRAC* at 906–07 (citing *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228, 233 (5th Cir.1970). A Board award is not conclusive only "when it is so unfounded in reason or fact, so unconnected with the wording and purpose of the collective-bargaining agreement as to 'manifest an infidelity to the obligation of the arbitrator.'" *BRAC* at 906 (citations omitted). If the arbitrator's award "draws its essence" from the collective-bargaining agreement it must be enforced. *Id.* at 907.

▇ Therefore, this court's role is to review the Board's award for its rationality and not to "embark on its own reading of the Agreement or, to substitute an improved interpretation of the contract." *Id.* at 908. With this in mind, I now turn to the Board's award which required Union Pacific to offer Gray an opportunity to participate in the G R/E Program despite the fact that Gray had previously participated in the Program.

I do not think that it can be said that the Board's award is not rationally inferable from the language **and purpose** of the contract. The "Prevention Program Companion Agreement" provides, in relevant part that the railroad and union,

> jointly recognizing that safety is the paramount concern and, further, that an alcohol and drug free environment is an essential element in maintaining a safe work place, agree to the following to ensure the utmost compliance with Rule G:

> 1. An employe (sic) **who has been dismissed from service as a result of violating Rule G** may elect to participate in the Rule G Rehabilitation/Education Program (Rule G R/E Program, or Program,) provided:'

>   (a) The employe (sic) has had no Rule G offense on his or her record for at least ten (10) years; and

>   (b) The employe (sic) has not participated in the Rule G R/E Program for at least ten (10) years; .... (Filing 2, Exhibit 1 at p. 16) (emphasis added).

Although it is true that the Companion Agreement contains a prohibition against participation in the G R/E program if the employee had participated in the Program within the last ten years, I note that this restriction is a subsection to the provision which is prefaced with the statement "[a]n employe (sic) who has been dismissed from service." In the case at bar, however, the Board specifically found that Gray's dismissal had to be reversed due to the "fatally tainted" proceedings conducted by the Hearing Officer which ultimately resulted in Gray's dismissal.

After reversing the dismissal, the Board was concerned with fashioning a remedy for the "fatal procedural violation." As the Board had reversed the dismissal, the court is of the opinion it was fully within the Board's power and jurisdiction to completely reinstate Gray without any terms or conditions. As the Board indicated in the award, however, it had some reservations about doing so stating that "[a]lthough the Board finds the Carrier may not rely upon the investigation to support Claimant's discharge, we cannot in good conscience restore to train service without safeguards and quali-

fications a man reasonably suspected of cocaine use, if not cocaine addiction."

Therefore, the Board decided to require Union Pacific to offer Gray an opportunity to participate in the Rule G R/E Program, with Gray's agreement to participate and his successful completion of the program being preconditions to reinstatement. I fail to see how such an award is a failure by the arbitrator to "carry out the aims of the agreement" or that the award is irrational or without foundation in reason or fact. To the contrary, I find that the Board's decision to require Gray to participate in a treatment program as a precondition to his reinstatement, as opposed to reinstating Gray unconditionally, is entirely in keeping with the statement contained in the Agreement that "an alcohol and drug free environment is an essential element in maintaining a safe work place."

Therefore, as I have found that the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract, I am obligated to enforce the Award. Accordingly, I find that the defendants' motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied.

IT IS ORDERED:

1. The plaintiff's motion for summary judgment is denied (filing 9); and

2. The defendants' motion for summary judgment is granted (filing 10).