UNION PACIFIC RAILROAD
COMPANY, Appellant,

v.

UNITED TRANSPORTATION UNION;
Bedell Gray, Appellees. (Two
Cases)

Nos. 93–2119, 93–2621.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1994.

Decided May 6, 1994.

Kathleen J. Ford, Omaha, NE, argued, for appellant.

Kevin C. Brodar, Cleveland OH, argued, for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and ALSOP,* Senior District Judge.

WOLLMAN, Circuit Judge.

Union Pacific Railroad Company ("Union Pacific") appeals from a district court order granting summary judgment in favor of the United Transportation Union (the "union") and Bedell Gray and confirming an arbitration award in Gray's favor. Union Pacific contends that the district court erred in determining that the Public Law Board had not exceeded the scope of its jurisdiction under the Railway Labor Act, 45 U.S.C. § 153, First (q) (1988), in fashioning the award. It further contends that the court erred in concluding that it lacked jurisdiction to review the award on public policy grounds. We reverse and remand for further proceedings.

* The HONORABLE DONALD D. ALSOP, Senior United States District Judge for the District of Minnesota, sitting by designation.

## I.

Bedell Gray worked as a brakeman for Union Pacific. On October 24, 1990, he was called on duty to work in through freight service from Memphis, Tennessee to North Little Rock, Arkansas. Upon arrival at North Little Rock, Gray was required to submit a urine sample for a random drug test pursuant to Federal Railroad Administration regulations. Union Pacific's designated medical review officer subsequently notified Gray that his test results were positive for cocaine. Gray was served with notice of a formal investigation of an alleged violation of Rule G of the Uniform Code of Operating Rules, Form 7908, and Union Pacific Drug and Alcohol Policy. He was withheld from service pending the outcome of the investigation.

The formal investigation was held on December 14, 1990. Gray arrived at the hearing with the union local chairperson and a union member to serve as his representatives. Over Gray's objection, the hearing officer ruled that Gray was entitled to only one representative and ordered him to choose one. Gray selected the union local chairperson; the hearing officer asked the union member to leave; and the hearing went forward. Based on evidence submitted at the hearing, Union Pacific found Gray to be in violation of Rule G and Union Pacific Drug and Alcohol Policy and discharged him from service.

The union appealed on Gray's behalf, and the matter was submitted to arbitration before the Public Law Board (the "Board").[1] The union argued that Gray was denied proper representation when the hearing officer refused to allow both of his designated representatives to assist in his defense. The Board found that the Discipline Agreement between the parties was arguably ambiguous regarding the number of allowable representatives, but that any ambiguity had been dispelled by many years of past practice during which accused employees designated more than one representative. The Board concluded that the hearing officer's decision

"not only violated the letter and spirit of the Discipline Agreement as it ha[d] been interpreted and applied by the Parties for many years, but also actually deprived [Gray] of representation necessary to the adequate presentation of his case in the investigation." It held that the hearing officer's "proven violation of the Discipline Agreement fatally tainted the proceedings and require[d] reversal of the discharge action based thereon."

In fashioning a remedy for the violation, the Board asserted that although Union Pacific could no longer rely on the investigation to support Gray's discharge, the Board could not "in good conscience restore to train service without safeguards and qualifications a man reasonably suspected of cocaine use, if not cocaine addiction." Accordingly, it awarded Gray compensation for wages lost from the day after he was discharged "through to the date when [Union Pacific] offers [Gray] participation in the Rule G R/E [Rehabilitation/Education] Program."

The Rule G R/E Program (the "Program") appears in the Companion Agreement between Union Pacific and the union and allows certain employees dismissed from service as a result of Rule G violations a chance to rehabilitate themselves and return to service. Pursuant to the Companion Agreement, employees dismissed from service as a result of violating Rule G may elect to participate in the Program, provided: (1) the employee has had no Rule G offense on his record for at least ten years; (2) the employee has not participated in the Program for at least ten years; and (3) the incident giving rise to the dismissal did not involve significant rule violations other than Rule G. Gray had participated in the Program within ten years of this incident. However, the Board asserted that "[f]or purposes of this case only, and without precedent or prejudice in future cases, [Gray's previous] participation in the ... Program shall not be deemed a bar to his participation in accordance with this Award."

Union Pacific filed the present action for judicial review of the arbitration award pursuant to 45 U.S.C. § 153, First (q). Union

---

1. Public law boards, sanctioned under the Railway Labor Act, are created by agreement between employers and unions to take the place of compulsory arbitration before the National Railroad Adjustment Board. 45 U.S.C. § 153 Second.

Pacific requested that the district court set aside the award, arguing that the award was contrary to public policy and exceeded the scope of the Board's jurisdiction. The union and Gray filed a counterclaim seeking enforcement of the award pursuant to 45 U.S.C. § 153, First (p). Both sides filed summary judgment motions. The district court denied Union Pacific's motion and granted the union's and Gray's motion, finding that it lacked jurisdiction to review the award on public policy grounds and that the remedy fashioned by the Board did not exceed the scope of its jurisdiction, 820 F.Supp. 1198. This appeal followed.

## II.

■ The scope of judicial review of arbitration awards under the Railway Labor Act is " 'among the narrowest known to the law.' " *International Ass'n of Machinists v. Northwest Airlines*, 858 F.2d 427, 429 (8th Cir.1988) (quoting *Diamond v. Terminal Ry. Alabama State Docks*, 421 F.2d 228, 233 (5th Cir.1970)). The Act provides that courts may set aside board orders on three grounds: (1) failure of the board to comply with the requirements of the Act; (2) failure of the board's order to confine itself to matters within the scope of the board's jurisdiction; and (3) fraud or corruption. *See* 45 U.S.C. § 153, First (q); *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam).

■ Relying on the second ground, Union Pacific argues that the Board exceeded the scope of its jurisdiction when it ordered Union Pacific to offer Gray an opportunity to participate in the Rule G R/E Program and when it awarded Gray backpay. It contends that the Board's award is contrary to the provisions of the Companion Agreement that bar Gray from participation in the Program and preclude claims "based on time lost as a result of the incident leading to the employee's participating in the . . . Program."

A public law board award is enforceable as within the scope of the board's jurisdiction unless the award is " 'without foundation in reason or fact.' " *International Ass'n of Machinists*, 858 F.2d at 430 (quoting *Brotherhood of R.R. Trainmen v. Central of Georgia*

*Ry.*, 415 F.2d 403, 414 (5th Cir.1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970)). In determining whether the Board exceeded its authority, "the agreement must be broadly construed with all doubts resolved in favor of the [Board's] award." *Walsh v. Union Pacific R.R.*, 803 F.2d 412, 414 (8th Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3213, 96 L.Ed.2d 699 (1987). "Ambiguities in the opinion accompanying an award are normally not a reason for refusing to enforce an award." *Id.* Further, the " 'test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract.' " *Brotherhood of Ry., Airline & Steamship Clerks v. Kansas City Terminal Ry.*, 587 F.2d 903, 906–07 (8th Cir.1978), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979) (quoting *Diamond*, 421 F.2d at 233).

We conclude that the Board did not exceed the scope of its jurisdiction in fashioning a remedy in the present case. The Discipline Agreement provides employees will not be dismissed without first being given a fair and impartial investigation. It further provides that if discipline assessed against an employee is not sustained on appeal, the employee's record will be cleared of the discipline, he will be reinstated to service if dismissed, and he will be compensated for wages lost. The Board determined that Gray did not receive a fair investigation and therefore was not properly dismissed. Its award allowed for reinstatement and backpay in accordance with the Discipline Agreement. It added as a condition of reinstatement that Gray participate in the Rule G R/E Program. Although Gray had participated in the Program within the last ten years, the Board apparently interpreted the Companion Agreement's bar against repeating the Program as applying only to employees who were properly dismissed from service. We cannot say that this interpretation of the agreement is "without reason or fact" or that the remedy is not "rationally explainable as a logical means of furthering the aims of the contract."

■ Union Pacific also argues that the district court erred in concluding that it

lacked jurisdiction to review the award on public policy grounds. Since the district court's decision in this matter, we decided *Union Pacific R.R. v. United Transp. Union (Madison)*, 3 F.3d 255 (8th Cir.1993), *cert. denied*, 114 S.Ct. 881, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994). In *Madison*, we held that federal courts possess authority to vacate arbitration awards under the Railway Labor Act on public policy grounds when those awards violate well-defined and dominant public policies. *Id.* at 260. We further held that "there exists a well-defined and dominant public policy against a railroad's employment of individuals whose impaired judgment due to the use of drugs or alcohol could seriously threaten public safety." *Id.* at 261. We conclude that the determination of whether the award in the present case violates this public policy is for the district court in the first instance. Accordingly, we remand to the district court for consideration of the Board's award in light of *Madison*.[2]

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

---

2. Union Pacific also objects to the district court's award of attorney's fees to defendants. The Railway Labor Act provides that in an enforcement suit the prevailing petitioner "shall be allowed a reasonable attorney's fee." 45 U.S.C. § 153, First (p). Given the court's decision in favor of defendants, its award of attorney's fees was proper under the mandatory language of the statute. The district court may need to reconsider its award of attorney's fees, depending upon the outcome of its decision on remand.