UNION PACIFIC RAILROAD COMPANY, Plaintiff,

v.

UNITED TRANSPORTATION UNION (C & T) and Bedell Gray, Defendants.

No. 8:CV 92–00499.

United States District Court, D. Nebraska.

Aug. 12, 1994.

Kathleen J. Ford, Omaha, NB, for plaintiff.

Kevin C. Brodar, Cleveland, OH, Robert E. O'Connor, Jr., Omaha, NB, for defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter comes before the court on remand from the Court of Appeals for the Eighth Circuit, *Union Pacific R.R. Co. v. United Transp. Union (Gray)*, 23 F.3d 1397 (8th Cir.1994).

In *Union Pacific R.R. Co. v. United Transp. Union (Gray)*, 820 F.Supp. 1198 (D.Neb.1993), this court granted the United Transportation Union (the "Union") and Bedell Gray's motion for summary judgment and enforced a Public Law Board's (the "Board") arbitration award in Gray's favor. This court also denied Union Pacific Railroad Company's ("Union Pacific") cross-motion for summary judgment, which sought judicial review of the Board's award pursuant to 45 U.S.C. § 153, First (q) (1986), part of the Railway Labor Act. In making this decision, this court declined to undertake review of the Board's award on public policy grounds and instead confined its review to statutory grounds enumerated in 45 U.S.C. § 153 First (q) (1986).

On appeal, Union Pacific contended this court erred in concluding it lacked jurisdiction to review the award on public policy grounds. The Court of Appeals for the Eighth Circuit reversed and remanded the matter, directing this court to consider the Board's arbitration award in light of *Union Pacific R.R. Co. v. United Transp. Union (Madison)*, 3 F.3d 255 (8th Cir.1993), *cert. denied,*. —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994), a case which was decided after this court's original decision.

In *Madison*, Union Pacific conducted an investigatory hearing regarding employee Kent H. Madison and his possible violation of Union Pacific's Rule G, an industry rule pro-

hibiting drug or alcohol use while on duty, subject to duty, or on company property. During the hearing, the hearing officer remarked on the record that Madison "'reek[ed] of alcohol.'" *Madison*, 3 F.3d at 257. Union Pacific sustained the charges against Madison and notified Madison that he was being discharged for violating Rule G.

The Union appealed on Madison's behalf to a Public Law Board (the "Board"). The Board ruled that Union Pacific's hearing officer violated Madison's due process rights and denied Madison a fair hearing because the hearing officer's comments strayed from the issues submitted to the Board for determination. Without considering whether Madison had violated Rule G, the Board ordered Union Pacific to reinstate Madison with full rights and backpay, conditioned only upon Madison passing the normal "back-to-work examinations." *Id.*

Union Pacific sought to overturn the Board's award in federal district court. The Union and Madison counterclaimed for enforcement of the award and both parties filed motions for summary judgment. The district court granted Union Pacific's motion, vacated the award, found that reinstating Madison "would violate the public policy against the use of drugs and alcohol by railroad employees," and remanded the action to the Board with directions to order a new hearing. *Id.*

On appeal to the Court of Appeals for the Eighth Circuit, the court held that federal courts may vacate arbitration awards under the Railway Labor Act on public policy grounds when those awards violate well-defined and dominant public policies. *Id.* at 258. The court cautioned that its conclusion does not mean "courts are free to overturn any award with which they disagree." *Id.* at 260. Further, the proper scope of public policy analysis consists of (1) identifying the existence of an explicit public policy against the use of drugs by railroad employees, and (2) determining whether the Board's reinstatement violates that public policy while "carefully observing the Railway Labor Act's proscription against judicial fact-finding." *Id.* at 261.

Based on numerous federal regulations concerning the use of alcohol and drugs by railroad employees, the court found a "well-defined and dominant public policy against a railroad's employment of individuals whose impaired judgment due to the use of drugs or alcohol could seriously threaten public safety." *Id.* at 261. The court then determined that the Board's reinstatement of Madison violated this public policy because the Board did not determine the likelihood of Madison working on the railroad in the future under the influence of alcohol or drugs, and because the Board reinstated Madison without safeguards to protect the public from the hazard of future accidents that could result from Madison's continued employment, despite evidence indicating that Madison was under the influence of drugs and alcohol while on duty.

> What violates public policy in this case is the Board's decision to reinstate to his former position a railroad employee who poses a significant risk to the public because of his potential for future drug use on the job. . . .
>
>  . . . .
>
>  . . . The only option that we have foreclosed today on public policy grounds is the reinstatement of a railroad employee to a safety-sensitive position in those cases in which the employee poses a significant risk to the public because of the danger of future substance abuse.

*Id.* at 262 & 263.

In the case at issue, the facts of which are fully set out in *Gray*, 820 F.Supp. 1198 (D.Neb.1993) and *Gray*, 23 F.3d 1397 (8th Cir.1994), the Board determined that the hearing officer at employee Gray's investigatory hearing violated the parties' Discipline Agreement by limiting the number of representatives Gray was allowed to have appear on his behalf. *Gray*, 23 F.3d at 1398. The Board ruled that this violation of the Discipline Agreement required reversal of Union Pacific's discharge of Gray, but the Board could not "'in good conscience restore to train service without safeguards and qualifications a man reasonably suspected of cocaine use, if not cocaine addiction.'" *Id.* at 1398 (quoting Board's opinion). Accordingly, the Board awarded Gray compensation from the day after Gray's discharge through the

date Union Pacific offers Gray participation in the Rule G Rehabilitation and Education Program (the "Program"). *Id.* The Board stated that Gray's rejection of the offer to participate in the Program would be deemed a voluntary resignation from service. If Gray chose to participate in the Program, his reinstatement was to be governed by a Memorandum Agreement (the "Agreement") dated July 29, 1985. *Gray*, 820 F.Supp. at 1200.

The Agreement specifically recognizes safety as the paramount concern and states that an alcohol- and drug-free environment is essential to maintaining a safe workplace. (Filing 1, Ex. 1, Agreement at 1). The Agreement provides for an initial evaluation of the employee to determine whether return to service is safe while the employee is undergoing an appropriate course of treatment. (*Id.* at 2, ¶ 6 & 7). If the employee cannot safely be returned to service while undergoing treatment, the employee is considered a dismissed employee while being treated and is not returned to service until it is safe to do so. (*Id.* at 2, ¶ 8). If the employee fails to follow the course of treatment, the employee is removed from the Program and dismissed as an employee. (*Id.* at 2, ¶ 9).

■ Under the two-part public policy analysis set forth in *Madison*, it is clear that there is an explicit, well-defined, and dominant public policy against a railroad's employment of individuals whose impaired judgment resulting from the use of drugs or alcohol could seriously threaten public safety. *Madison*, 3 F.3d at 261. However, the Board's award does not violate this public policy.

■ As described above, the Board's award requires Gray to participate in a drug treatment program as a precondition to his reinstatement, and the Agreement which was incorporated into the Board's award provides that Gray will not be returned to service unless, after evaluation, it is safe to do so. Unlike the award in *Madison*, the fact that the Board required Gray's enrollment in a drug rehabilitation and education program indicates that the Board considered the likelihood of Gray working on the railroad in the future under the influence of drugs and the Board implemented safeguards to protect the

public from the hazard of future accidents that may result from Gray's continued employment.

■ The fact that the Board allowed Gray to enter the Rule G Program, although he had participated in the Program during the past 10 years and the Agreement prohibits entry into the Program if an employee has participated in that timeframe, is inconsequential. The court in *Madison* stated that arbitrators may create unique sanctions as long as the arbitrator's remedy is " 'rationally explainable as a logical means of furthering the aims of the contract.' " *Madison*, 3 F.3d at 263 (quoting *International Ass'n of Machinists v. Northwest Airlines*, 858 F.2d 427, 430 (8th Cir.1988)). Here, the Board's award is a logical means of furthering the stated aims of the Agreement, that is, maintaining a safe workplace by fostering an alcohol- and drug-free environment, and of furthering the public policy against the use of drugs by railroad employees.

■ Moreover, the Board's award is consistent with the goals of the Railway Labor Act. The Board properly refused to reward the Union Pacific for violating the bargaining agreement, while at the same time the Board properly denied Gray a "windfall". In the process the Board fashioned a remedy that was responsive to the public's interest in safety. This was precisely the sort of efficient, timely, flexible, and common-sense approach contemplated by Congress in the Railway Labor Act with regard to these "minor" disputes. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) ("The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions.").

Because I have found that the remedy fashioned by the Board does not violate, but rather furthers, the public policy against a railroad's employment of individuals whose impaired judgment due to drug use could threaten public safety, and because I find the award is entirely consistent with the pur-

poses of the Railway Labor Act regarding disputes of this kind, I am obligated to enforce the award. Accordingly, I find that the defendants' motion for summary judgment should be granted and the plaintiff's motion for summary judgment should be denied.

IT IS ORDERED:

1. The plaintiff's motion for summary judgment is denied (filing 9);

2. The defendants' motion for summary judgment is granted (filing 10);

3. Pursuant to 45 U.S.C. § 153 First (p) (1986), the defendants are entitled to reasonable attorney fees;

4. In accordance with NELR 83.14, the defendants may make application for reasonable attorney fees, supported by appropriate affidavits and a brief, by August 31, 1994, and the plaintiff may respond by appropriate affidavits and a brief by September 14, 1994; and

5. The Clerk of the United States District Court for the District of Nebraska shall withhold entry of judgment in this case until the defendants' application for attorney fees is resolved and upon further order of this court.